# Scarbrough, *et al. v.* Scarbrough, *et al.*

## *Bill to Set Aside Will.*

(Decided November 25, 1913.   64 South. 105.)

1. *Appeal and Error; Waiver.*—Errors not insisted upon in brief of counsel for appellant are waived.

2. *Wills; Contest.*—Where undue influence is charged, the question for determination is whether the whole will, or the particular provision challenged, was the result of the testator's free will, or whether his free will was overcome by the dominant influence of another.

3. *Same; Burden of Proof.*—The mere fact that the beneficiary occupied a confidential relation toward the testator, does not raise the presumption of undue influence, nor does it serve to shift the burden of proof as to that issue to the proponent of the will, or to one who would sustain it after probate.

4. *Same.*—Where the beneficiary occupied a confidential relation to the decedent and took an active part in the preparation and procurement of the will, and propounds the will for probate, the burden shifts and is on the proponent to show that the will was not induced by undue influence.

5. *Same.*—The evidence of the beneficiary's participation in the preparation and procurement of the will is perhaps sufficient to cast on him the burden to show want of undue influence.

6. *Same; Presumption.*—Irregularities or preference in the bequest, particularly in the case of collateral kindred, will not raise a suspicion against the validity of the will.

7. *Same.*—The evidence held insufficient to show that the principal beneficiary fraudulently misrepresented the value of the property belonging to testatrix in such sense that by his misrepresentations he would receive a greater share than the testatrix intended; it appearing that other natural objects of her bounty were made residuary legatees while the beneficiary is given a specific bequest.

8. *Same; Undue Influence.*—In cases of gifts inter vivos to one occupying a place of trust towards the donor, the presumption of undue influence does not apply with all its strictness; for in the case of the gift inter vivos the donor denudes himself, while in the

[Scarbrough, et al. v. Scarbrough, et al.]

case of a testamentary gift he merely disposes of property for which he has no further use.

9. *Same.*—Presumption of undue influence arising in case of bequests to one occupying a confidential relation towards the testator may be rebutted.

10. *Same.*—The fact that testatrix had no independent advice and left the bulk of her estate to her brother with whom she had lived since her husband's death, will not establish undue influence of her brother, notwithstanding he occupied a position of trust towards her.

11. *Same.*—Where the contest is based on the presumption of undue influence which arises in the case of a testamentary gift to one occupying the position of trust towards the testator, there is no call for the application of the doctrine that one who would procure the execution of a will by fraud would not hesitate to uphold it by perjury.

12. *Same.*—Actual fraud is never presumed notwithstanding out of consideration for public policy equity will not allow some bequests to stand where they are made to persons occupying confidential relation to the testator and donor.

13. *Same; Evidence.*—The evidence examined and held to show good faith on the part of the beneficiary.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Bill by William A. Scarbrough and another, against A. Lee Scarbrough to declare a will void, and to administer an estate according to the law of distribution. Decree for respondent and complainants appeal. Affirmed.

CHARLES D. KLEIN, RUSHTON, WILLIAMS & CRENSHAW, and HILL, HILL, WHITING & STERN, for appellant. Confidential relationship existed between the testatrix and proponent who is the chief beneficiary under the will.—*Holt v. Agnew,* 67 Ala. 360; *Moore v. Spier,* 80 Ala. 129; *Lyon v. Campbell,* 88 Ala. 462; *Garrett v. Heflin,* 98 Ala. 615; *Coghill v. Kennedy,* 119 Ala. 641; *McQueen v. Wilson,* 131 Ala. 606; *Smith v. Smith,* 56 South. 949. The activity of the proponent in and about the preparation and execution of the will is such as to raise the presumption of undue influence on his part,

and to cast upon him the burden of rebutting that presumption.—*Mullen v. Johnson,* 157 Ala. 262; *Henry v. Hall,* 106 Ala. 84, and authorities supra. The proponent has failed to discharge this burden.—*Haraway v. Haraway,* 136 Ala. 499; *Noble v. Moses,* 81 Ala. 540, and authorities supra. The evidence affirmatively shows that the execution of the will was induced by undue influence or fraud practiced upon testatrix by the proponent.—Underhill on Wills, section 132; 44 Cyc. 1155, and authorities supra. Sufficient capacity, free agency without imposition of fraud or deceit are the elements of a valid will.—*Higginbotham v. Higginbotham,* 106 Ala. 314; *Council v. Mayhew,* 55 South. 319; *Moore v. Heineke,* 119 Ala. 638, and authorities supra.

RUTHERFORD LAPSLEY, and WILLETT & WILLETT, for appellee. Having failed to insist upon the issue of mental incapacity, counsel have waived that ground, and the only questions presented are the questions involving undue influence. This case is very much like the case of *Shirley v. Ezzell,* 60 South. 905, and under it, the burden was not shifted to the proponent to overcome any presumption of undue influence. The finding of the court under the evidence is correct and an affirmance should follow.—*Mullen v. Johnson,* 157 Ala. 262; *Council v. Mayhew,* 55 South. 313; 13 Enc. of Evid. 314, and authorities there cited; also authorities cited by appellant.

SAYRE, J.—The bill in this case seeks to set aside the last will and testament of Mary L. Scarbrough, deceased. Stress is laid by complainants, who have taken this appeal from a decree sustaining the will, upon the proposition that the will was the product of actual

fraud on the part of the principal beneficiary, or of un-
due influence exercised by him.    There is in the bill
averment also that the will was a nullity for lack of
testamentary capacity in the testator; but what testi-
mony there was to sustain this last-named contention
was overwhelmed by evidence to the contrary.   It is not
insisted upon in briefs filed in this court, and will be dis-
missed as having been satisfactorily disposed of by the
opinion and decree in the court below.   As for the ques-
tions of fraud and undue influence, there is nothing of
novelty in the principles of law involved to require
statement, while, as for the facts, we might without im-
propriety leave the discussion of them, too, where the
learned judge of the city court left it in his decree.
However, as the case has been discussed at considerable
length at the bar and in briefs, some expression of our
views will be expected, and so will be given as briefly
as may be.

In cases of this character, where undue influence is
charged, the issue set before the court is whether the
instrument or the particular provision challenged was
the result of testator's free will, or whether his inten-
tion to so provide was produced by the dominant in-
fluence of another mind.   In this jurisdiction the pre-
sumption of undue influence is not raised, nor is the
burden of proof as to that issue shifted to the propon-
ent of the will, or to one who would sustain it after pro-
bate, by the mere fact that the beneficiary occupied a
confidential relation towards testator.   Where, how-
ever, in addition to such relation of trust and confi-
dence, circumstances of suspicion are shown, as, for ex-
ample, that the beneficiary took part in the preparation
or procurement of the will, the burden is shifted, and
the law lays it upon the proponent to show that the con-
tested instrument or provision was not superinduced by

undue influence.—*Bancroft v. Otis,* 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904.

It is not denied that Dr. Scarbrough, to whom we shall hereafter refer as the defendant, the chief beneficiary under the will of his sister Mrs. Scarbrough, enjoyed his sister's confidence to a high degree. During the life of her husband, on the frequently recurring occasions of his violent and dangerous drunkenness, she had been accustomed to ask and receive this brother's assistance and care. During her brief widowhood of about two months, defendant had been her active and trusted agent in the management of the considerable estate left to her by her husband who, notwithstanding his habits, had been a successful man of business. Their relations were unquestionably confidential in a high degree, and, though she was a woman of good mind, she had the limitations one would expect to find in one of her sex whose life had not been troubled by matters of business. We are entirely satisfied that in respect to the management of those affairs which devolved upon her after the death of her husband defendant stood in such relation to the testatrix that probably, if he had been so disposed, he might have imposed his judgment and will upon her, and that this power and influence might have been so extended as to dominate the making of her will. Such a situation must attract the critical attention of the court.

It is disputed between the parties whether the activity of defendant in the matter of the execution of the will was such as, without more, to bring him within the rule of our law in respect to the burden of proof. When testatrix executed the will in question she had been confined to her bed for six days. She died four days later. From the testimony of the defendant and the attending physician we find that defendant did nothing to

bring his sister's mind to the conclusion to make a will. She was ill at defendant's home. Defendant and the physician were apprehensive but not at all hopeless of her recovery. On several occasions she stated to defendant her desire to make a will. Defendant consulted the physician who thought it unnecessary—said she would recover. Finally, however, he said it would be better to let her make the will and get it off her mind. Then defendant, acting upon his sister's suggestion, made a memorandum of her wishes and by her direction took it to the lawyer who had for years been advising her husband and herself about their affairs of various kinds. The lawyer, acting upon his own initiative entirely and upon his own notion as to what was proper and expedient in the premises, though disposing of the estate according to the indicated wishes of testatrix, added certain collateral provisions to which appellants refer as being greatly for the benefit of defendant; but some of which defendant thinks imposed burdens upon him of which he would have been gladly relieved, to wit: He inserted a provision that defendant, who was to be executor, should not be required to give bond or account to any court; that the several bequests, the one to defendant being first named, should be satisfied in the order named; that the defendant as executor should have certain enlarged powers which were to be exercised by him as trustee for other beneficiaries; and that defendant should be compensated for his services as executor over and above the legacy to him. Defendant, we may fairly infer, after informing himself of the contents of the will as drawn by the lawyer, submitted it to testatrix and left it with her for consideration. Some hours later, on her request, he summoned the lawyer and another person of her nomination to witness the execution of the will. He denies doing more. There

is no evidence that he did more. He was not present when the will was executed. Probably on these facts it ought to be held that by implication defendant suggested to testatrix his approval of the additional provisions the scrivener had put into his draft of the will, and thereby that she should approve them. All the rest was nothing more than the mechanical performance of services requested by testatrix, and could have had no tendency to impose defendant's will upon testatrix in any respect. A suggestion of that sort looks like a slender thread on which to hang a great doctrine; but for the purposes of this case we will concede complainants' contention that this was activity which, under the rule of our law, put upon defendant the burden of proving that the will was not the product of undue influence.

Complainants have adduced besides other evidence with the purpose to show circumstantial facts which must be taken into consideration in this connection. Those tendencies of the complainants' evidence to which we here refer, and upon which they insist, are: That defendant had the opportunity to exercise undue influence over testatrix in the making of her will; that he was a masterful spirit, she yielding and easily influenced; that testatrix disposed of her property contrary to her previously expressed intentions; that defendant failed to notify relatives of the illness of testatrix; that he kept the execution of the will a secret; that the complaining brothers were poor, defendant well-to-do, and yet defendant took under the will the bulk of his sister's property; that defendant misrepresented to testatrix the value of her estate, so that she supposed complainants would receive as residuary legatees a much larger benefit than they will receive if the will is sustained; and, lastly, that testatrix had not the benefit of competent independent advice. The effect of

the evidence touching these things very largely depends upon the angle from which they are considered. Accordingly, the parties take very different views. For us to make a statement of all those considerations of fact which have led us to the conclusion that the learned judge below arrived at a correct decision in favor of defendant would require a recital of the larger part of the record. Such a statement would advantage no one now or hereafter. We propose, therefore, to state our views in a general way and leave the case with that.

That defendant had opportunity cannot be denied. It has already been conceded.

We are unable to find satisfactory ground upon which to base either branch of the proposition that defendant was a masterful, testatrix a yielding, spirit, if, as seems necessary to appellants' case, it argues an unusual development of those characteristics in either of them. They both appear to us to have been well balanced, capable people, mindful of their own interests, though considerate of the rights of others.

The testimony for the proposition that testatrix had expressed different ideas about the disposition of the bulk of her estate we consider to be in part untrustworthy, in other part trival. We give credit to a part of it, but that part relates only to some articles of jewelry and personal adornment evidently of no great value as compared with the whole estate.

Defendant did fairly well in notifying relatives of testatrix's illness, if that has anything to do with the question at issue. We cannot attach any importance to the evidence or the argument on this point.

There is no suggestion as to how or by whom, other than defendant, the will might have been more appropriately kept during the three or four days testatrix survived its execution, nor any reason why, within that

time, the complaining brothers should have been noti-
fied of its contents. After its probate, which was had
promptly, but decently and in due course, they might
have applied to the probate court for information.

Among children and lineal descendants, if they be
similarly circumstanced, some approach to equality
may be expected of the normally disposed, freely acting,
mind when making a testamentary disposition of prop-
erty. But the law is careful of the right of the indi-
vidual to dispose of his property according to his own
will. Hence the rule in respect to the burden of proof
in certain conditions in cases where undue influence is
charged. Hence also, on the other hand, to quote the
appropriate language of the judge below: "Irregular-
ities or preferences in bequests do not signify in them-
selves anything except the desire of the testator. In the
absence of other evidence, inequality would not of itself
be a circumstance of the slightest consideration against
the validity of a will. More especially would this be
true in the case of collateral kin, but even in a case of
direct descent it would not be a circumstance of sus-
picion without something else."

That defendant—referring now as heretofore to Dr.
Scarbrough—fraudulently misrepresented to his sister,
the testatrix, the value of her estate, and thus induced
a division of her property among her brothers and the
children of a deceased sister in what must have seemed
to her to be approximately equal parts when in fact as
residuary legatees complainants and those in whose in-
terest they are contesting got only a small proportion
of the estate, or that he misrepresented to her the value
of her property at all, is a conclusion without substan-
tial or satisfactory support in the record. Complain-
ants lay stress on this point. They make it the subject
of a separate brief. They say this fact alone constituted

[Scarbrough, et al. v. Scarbrough, et al.]

actual fraud for which, apart from any technical rule of the courts in respect to undue influence, the probate of the will in question should be set aside and the will itself annulled. The testimony in support of this insistence proceeds entirely from interested parties, it is improbable, and at most supports only the inference that defendant had informed testatrix that interest in her husband's estate would amount to $75,000 when in fact it was worth not more than $40,000, possibly $45,000. This information, if given to testatrix with the fraudulent purpose charged, must have been given with a prescient anticipation of the terms of a will, to be thereafter executed, which would bequeath testatrix's stock in the Mercantile Company, constituting the bulk of her property, to defendant, and leave the rest of her estate to be divided among residuary legatees, as the will in contest did, and must have intended also that thereafter, as long as testatrix might live, she should be kept in ignorance of the value of her estate and thus of the effect of the will she was to make. In view of the facts, a most improbable theory. Testatrix was yet a young woman—at least she was not old. At the time in question she was in apparent good health. She was depressed by the recent death of her husband and a sister, but the thought of her own early death does not seem to have occurred to her relatives. There was at that time no reason why it should have occurred to them. She and they were planning how and where she should live. We conclude therefore that if defendant misinformed testatrix about the value of her estate he did so because he was himself misinformed, as he might well have been. Testatrix's property came to her from her husband, who had then been dead less than two months, and consisted in the main of interests in business enterprises as to the value of which, upon liquidation, de-

[Scarbrough, et al. v. Scarbrough, et al.]

fendant, though he had them in charge for testatrix, may well have been mistaken. At any rate, on the evidence in the record, we do not entertain a suspicion even that defendant at any time deliberately and knowingly deceived testatrix in reference to her estate for the fraudulent purpose of producing the will in contest.

Complainants urge that testatrix should have had competent independent advice in the matter of making her will. In the short interval since her husband's death testatrix had intrusted her business affairs to her brother, the defendant. Equity has established the wholesome doctrine that where such relation is shown undue influence is presumed in the case of a gift inter vivos. This doctrine has been extended in this country to cases of testamentary gifts; but there is an inherent difference in the two cases which must affect in some degree the measure of proof necessary to overturn the presumption which equity indulges as a matter of public policy, for in the case of a gift inter vivos the donor denudes himself, while in the case of a testamentary gift he has the satisfaction of disposing of that which he can no longer use.—*Huguenin v. Baseley*, 2 White & Tudor Lead. Cas. 1276. The presumption in any case may be overturned by proof of competent independent advice and counsel or by any other evidence which satisfies the judicial conscience that the gift was the voluntary and well-understood act of the testator's mind. The only advice which it occurs to us testatrix could possibly have needed as affecting those provisions of the will to which complainants really object would have been advice as to the relative value of the specific and residuary gifts. Defendant, if he would rely on the fact that testator had independent advice on that subject, certainly need not show that testatrix was furnished with a complete inventory of her property and its value. To re-

quire that would be to deny to her the right in the emergency of her condition to dispose of her property according to her desire. She had no material interest to serve or conserve. She had the right to dispose of her property in her own way even though capriciously. Any one going to advise her could only say to her that the will she proposed to make would give the larger part of her estate to defendant. We think it highly probable she knew that. If so, the lack of independent advice cannot count as a circumstance against the validity of the will; that is, it is not to be taken as a badge of fraud. However, whether or not testatrix knew the relative values of the different interests she was creating, on the concession we have made in respect to the burden of proof in this case, the absence of advice on that subject leaves with defendant, under the rule which has been established, the burden of showing by other means that testatrix's expressed intention was not the result of undue influence on his part.

Conceding then, again, that there is enough in complainants' case to put defendant to his proof, we will turn to that. Some part of the support for it is furnished by the testimony of defendant himself. Complainants (appellants) propound in this connection the doctrine that one who would procure the execution of a will by fraud will not hesitate to sustain it by perjury. That may be sound doctrine in cases where actual fraud is practiced, though its use as argument that there has been such fraud begs the question. But where the contest is rested, as this now seems to rest, upon the bare technical doctrine of the courts in regard to that undue influence which is presumed to arise out of the mere fact of confidential relations, complainants' proposition is harsh and unwarrantable.

Actual fraud is never presumed; but equity will set aside, upon the principle of general public policy, vol-

untary donations obtained by persons standing in some confidential or fiduciary relations towards the donor, in which dominion may be exercised over him, unless the donee is able to show the donation was the result of free will. The rule does not reflect in any special manner upon the character of the donee, and we have known some estimable and irreproachable persons to fall victims to this doctrine. Necessary general rules of law sometimes so operate. But rules capable of working out such results in individual cases, though necessary as a general proposition, ought not to be extended beyond the requirements of the general policy they serve. The rule does not impugn the honesty of a donee because he has been trusted. It puts the burden of proof upon him, but leaves his testimony to be weighed upon those ordinary considerations which determine the value of testimony.

We have said that the defense depends in part upon the testimony of defendant. But he is corroborated at many and most vital points by the testimony of witnesses against whom, with one exception, nothing has been said—against whom, we infer, nothing can be said. These are the attending physician, the lawyer who drew the will and witnessed its execution, and the other witness to the will, as well as some others who testified to facts persuasive of the truth of defendant's account of the circumstances under which testatrix determined to make a will and did execute the will in contest. The testimony of these witnesses shows to our mind a state of affairs altogether creditable to defendant. It shows that defendant had a special claim on the affections of his sister, the testatrix, and that she was fully justified in reposing confidence in him. He had given her aid and comfort on many occasions when she needed them and at times and under conditions indicating that his good offices were exercised without any expectation of

[Scarbrough, et al. v. Scarbrough, et al.]

material reward. As the judge below observed in his decree, "No one can read the evidence in this case and doubt that his sister felt the very tenderest affection for Dr. Scarbrough, and she ought to have so felt." We have already noted the circumstances in which defendant went to an attorney with a memorandum of the will. That attorney, along with others, now appears for defendant; but previous to the death of testatrix he had no professional retainer from defendant. He had advised the husband of testatrix in his business affairs, and seems to have acted for testatrix in the matter of her husband's estate, and thus no doubt was brought into relations of some intimacy with defendant who acted as her agent. Complainants charge that in preparing the will he was likely influenced by a lively anticipation of future employment by defendant rather than by his sense of duty to testatrix. We find no just ground for the imputation. In the presence of this lawyer, and of the other witness, an old friend of the family, summoned as we have said at the request of testatrix, and in the absence of defendant, after having had the draft of the will in her possession for several hours, testatrix, responding to the lawyer's repeated offer and effort to read to her the will he had prepared, declared in substance that she had read it, knew its contents, was satisfied with it, and desired no further explanation of it, but desired to execute the instrument as soon as possible and have done with it. She was sick and weak, but her mind was perfectly clear, her testamentary capacity undeniable. On the case shown by the whole evidence the will was properly sustained. The judge below so ruled, and his decree will be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.