# Betz, *et al. v.* Lovell, *et al.*

### Bill to Set Aside Will.

### (Decided June 8, 1916.   72 South. 500.)

1. **Wills; Capacity to Make.**—An educated, intelligent woman, well able to manage the business affairs of her family, had testamentary capacity to make her will, notwithstanding she had a sinking spell after the arrival of the scrivener for whom she had sent to draw her will, where it appeared that in a few minutes she regained her usual mental powers, dictated memoranda for the preparation of the will, suggested that a close neighbor and intimate friend be called as a witness to the will when it was prepared, expressed her satisfaction when the paper was read over to her, and attached her signature while sitting up in bed.

2. **Same; Undue Influence; Confidential Relations; Burden of Proof.**—To apply the rule as to the burden of proof, which is the gist of the doctrine of confidential relation in the law of wills, there must be proof that certain relations existed between testator and beneficiary upon which the policy of the law raised the presumption of undue influence, or proof that as a matter of fact the beneficiary has exercised a general dominating influence over the donor.

3. **Same.**—In a suit to set aside a will as produced by fraud and undue influence, the burden of proof is shifted to the beneficiary when evidence of confidence and trust probably influencing the transaction has been introduced, but it may be rebutted by proof that testator had competent, independent advice, or by other evidence that the transaction resulted from the voluntary and well understood act of the testator.

4. **Parent and Child; Dominence; Presumption; Burden of Proof.**—Although the relationship of parent and child is per se confidential, yet the prima facie presumption is that the parent is the dominant party, and free from undue influence, and in cases where transactions between parent and child are in question the burden is on complainant to show that the prima facie dominence of the parent has been displaced and the parent is subservient to the child.

APPEAL from Cullman Chancery Court.
Heard before Hon. JAMES E. HORTON, JR.

[Betz, et al. v. Lovell, et al.]

Bill by Henry Betts and another against Mary Lovell and others, to set aside a will, and to annul its probate. From a decree for respondents, complainants appeal. Affirmed.

F. E. ST. JOHN, for appellant. WILLIAM E. JAMES, for appellee.

SAYRE, J.—Henry Betz and Celestine Bush, son and daughter of Catherine Betz, deceased, filed this bill to set aside the will of their mother on the ground that it had been procured by the undue influence or coercion of the defendant Mary Louise Lovell, their sister. Catherine Beatty, a sister, and Fred Betz, the surviving husband of testatrix, were also made parties defendant.

Testatrix was 72 years of age. Defendant—we mean Mrs. Lovell—was her eldest daughter. Testatrix was educated, intelligent, and well able to manage the business affairs of the family. All the property stood in her name, she had contributed most substantially to its acquisition, and it is easy to see that she dominated her household. Except for occasional vists, defendant had been absent from her mother's home for many years. Shortly before this will was made the daughters were summoned to the bedside of their mother. Defendant, who lived and earned her livelihood in Tampa, Fla., came within a few days. The other daughters came too, Mrs. Beatty from Birmingham and contestant Mrs. Bush from Texas; but it seems they stayed only a short time. On the day after the arrival of defendant, and before the other came, deceased made the will in question. Defendant testified that at her mother's request—and there was nobody to dispute the point—she sent for Buchmann to draw the will. Testatrix had had several sinking or fainting spells during the night before, and had another after Buchmann's arrival. But after a few minutes she appeared to regain her usual mental powers. Buchmann had attended to business matters for her, and evidently was an intelligent and competent scrivener. He testified that he prepared the will at the dictation of testatrix. Defendant and Fred Betz were present while Buchmann made memoranda of testatrix's desires. Defendant seemed to be solicitous about her mother, and contestants think she was unduly demonstrative. It would be a harsh judgment to say that her actions evidenced anything more than the natural affection of a daughter for a mother whose life was supposed to be drawing

[Betz, et al. v. Lovell, et al.]

rapidly to a close. Defendant and Betz were then excluded from the room while Buchmann went over the memoranda with Mrs. Betz. Buchmann then took the memoranda away to his office, prepared the will, and in a short while returned to have it executed. Testatrix suggested that Miss Eyer, a close neighbor and intimate friend of long standing, be called in as a witness with Buchmann. The paper was then read over to her; she expressed her satisfaction with it, and sitting up in bed, attached her signature. It did not occur to Buchmann or Miss Eyer that testatrix was not in the full exercise of her faculties. On the contrary, they were of opinion, very decidedly, that Mrs. Betz was in full possession of her usual mental powers. Defendant and Fred Betz were then present. He did not, at the time, seem to think anything improper was going on. Henry Betz was probably in the neighborhood, but, considering his character and previous habits of life, there was no reason why testatrix should have consulted him, or why his presence should have been desired. Everything seems to have been done in a most orderly and natural way. The instrument itself was well conceived and clearly expressed. In the light of the evidence, its dispositions do not appear to have been unnatural. They do not arouse suspicion against the integrity of the instrument.

(1, 2) Testatrix survived the execution of this will for two months. At times during this period she was able to leave her bed and make some visits around the neighborhood, and during this time, according to the testimony of Miss Eyer, she spoke of her will, and expressed herself as content that the matter had been arranged. During this time defendant cared for her mother and, it may be conceded, took general charge of the household. Still the fact that testatrix during this time expressed satisfaction with the will she had previously executed is a circumstance to be considered.—*Taylor v. Kelly*, 31 Ala. 59, 68 Am. Dec. 150.

The foregoing is a rough sketch of the facts most pertinent and material to the questions at issue as we have found them upon consideration of the evidence. We have not attempted to make a circumstantial statement of the evidence. To do so would involve a restatement of much of the record, and would serve no useful purpose. The witnesses have expressed their opinion rather freely about the persons and issues involved; but these opinions, except such of them as relate to the testamentary capacity of testatrix, do not appear to be of much consequence.

It may be noted that Fred Betz denied that he knew anything of the execution of the will; but we are constrained to say that he was present on that occasion, and hence that the averment to the effect that the execution of the will was kept secret from the family of testatrix, other than Mrs. Lovell, cannot be sustained. This witness also expressed sweeping opinions concerning the character of defendant and the extent of her influence over testatrix, and his testimony is the mainstay of this contest; and yet he appears on the record as a party defendant to the bill—necessarily so, for in the probate court he had joined in the petition to have the will admitted to probate. These circumstances, the fact that shortly before this bill was filed he made an affidavit wholly irreconcilable with his deposition in the record, and the general tone of his testimony, have materially impaired his credibility.

(3, 4) The testamentary capacity of deceased cannot be seriously questioned. As for the technical doctrine of confidential relations upon which the contestants rely, we do not intend in the least to abate the wholesome policy of that doctrine in its proper field of operation. The doctrine had an extreme application in *McQueen v. Wilson*, 131 Ala. 606, 31 South. 94. As we have heretofore observed, it is not a doctrine of general and indiscriminate suspicion.—*Curry v. Leonard*, 186 Ala. 666, 65 South. 362. The application of the rule as to the burden of proof, which is the gist of the doctrine, must be called for by proof of certain relations from which the policy of the law raises the presumption of undue influence or by proof that as matter of fact the beneficiary of the transaction under inquiry has, in general, exercised a dominating influence over the donor; but this burden of proof, once shifted to the donee by evidence of confidence and trust probably influencing the transaction, and, in the case of a will, by proof of some activity on the part of the beneficiary in procuring its execution, may be rebutted by proof that the donor had competent independent advice, or by other evidence sufficient to satisfy the judicial conscience that the transaction resulted from the voluntary and well-understood act of the donor.—*Jones v. Brooks*, 184 Ala. 115, 63 South. 978; *Scarbrough v. Scarbrough*, 185 Ala. 468, 64 South. 105. The relation of parent and child is per se confidential, but it is presumed, prima facie, that in transactions between them the parent is the dominant party, and that they are free from undue influence, and in such cases the burden is upon the complainant, who would set aside the transaction, to

[Middleton v. Western Union Telegraph Co.]

show that time and circumstances have reversed the order of nature, and that the dominion of the parent has been displaced by subservience to the child.—*Hawthorne v. Jenkins*, 182 Ala. 255, 62 South. 505, Ann. Cas. 1915D, 707. These are familiar principles, and they have been recited simply to note their due consideration in this cause. Our judgment is that testatrix was competent to make the will in question; that it does not appear to have been the result of undue influence, presumed or shown in fact; that no fraud or coercion was practiced upon her; but that the will must be given effect, according to its prima facie import, as the voluntary and well-understood disposition by testatrix of property she had a right to distribute as her feelings, not unnatural in the circumstances, might dictate.

Affirmed.

ANDERSON, C., J., and McCLELLAN and GARDNER, JJ., concur.