(118 So. 647)

## McLENDON et al. v. STOUGH et al.
### (4 Div. 355.)

Supreme Court of Alabama.　Nov. 1, 1928.

Rehearing Denied Nov. 30, 1928.

Frank B. Bricken, of Luverne, for appellants.

W. H. Stoddard, of Luverne, for appellees.

446

BROWN, J.  The probate of the will in question was contested on two grounds—want of·testamentary capacity and undue influence.

The evidence was clearly insufficient to sustain the alleged undue influence, and we will confine our treatment of the question related to the other ground.

█ It is too well settled to permit of question that an insane delusion, often denominated "partial insanity" or "monomania," is sufficient to avoid a will, if the will is ."the direct offspring and fruit of such insanity." Cotton v. Ulmer, 45 Ala. 378, 6 Am. Rep. 703 ; Florey's Ex'rs v. Florey, 24 Ala. 241 ; Batson et al. v. Batson et al., 217 Ala. 450, 117 So. 10 ; 28 R. C. L. 104, § 55.

While as a general rule the capacity of a testator to dispose of his estate does not depend on the justice of his prejudices, and the fact that the disposition he makes of his property may be said to be unreasonable and unjust, this alone is not sufficient to deny testamentary capacity.  Yet, if the manifested prejudices of the testator against the natural objects of his bounty can be explained on no other theory than that of insane delusion, and the will is the direct offspring and fruit of such insane delusion, this is sufficient to avoid it.  Carnahan v. Hamilton, 256 Ill. 508, 107 N. E. 210, Ann. Cas. 1916C, 21 ; 28 R. C. L. 107, § 59 ; Dibble et al. v. Currier, 142 Ga. 855, 83 S. E. 949, Ann. Cas. 1916C, 1, and note page 10, subd. (b), and authorities there cited.

█ The witness Dr. Naftel testified that he had been a practicing physician since 1880, more than 40 years, and had much experience with nervous and mental diseases as a general practitioner ; that he had known and been intimately acquainted with the testator and his family during that period, having been his family physician up until about 10 years before testator's death, and treated the testator up until a short time before his death ; and, further, that:  ,

"When one's mind is off on one particular subject, it is monomania.  He may not be a raving maniac, very often he displays this against one member of his family, may be some one else, but on one subject.  It is not only possible, but quite frequently happens in human affairs, that a person may be insane on one subject and very sane on every other subject. One rarely finds a man or woman that is insane on every subject.  I could talk to one for

two or three days and never discover it unless I touch the weak point.  A man may be perfectly crazy when you mention his family, but sane on every other subject.  You will find that recognized by medical authorities."

The witness then stated that it was his opinion or judgment, based on his observation and long acquaintance, that the testator was a man of that kind—insane on the subject related to his family ; that "his mind was deranged on that particular subject."

Other witnesses, nonexperts, were examined, and testified to long acquaintance with the testator and dealings with him, his characteristics, that he was subject to fits of violent anger in his attitude and relation to his family, and gave their opinion to the effect. that he was not of sound mind in respect to dealings with his family.  While proponent adduced testimony to the contrary, we are of opinion that the evidence, taken as a whole, when considered in connection with the will which in effect disinherited all of testator's children, except two daughters, presented a jury question, and justified the refusal of the affirmative charge requested by the proponent.  Pollard v. Pollard, 207 Ala. 270, 92 So. 488.

█ In submitting the question of testamentary capacity to the jury, the trial court instructed the jury in the oral charge that:

"All that the law requires is that the testator shall have mind and memory sufficient to recall and remember the property he is about to bequeath, the objects of his bounty, the disposition he wishes to make, to know and understand the business to be performed, and to discern the simple and obvious relations of its elements to each other. * * * The true rule in matters of this sort is, however feeble, weak-minded, capricious or notionate he may be, if he be able to have a decided and rational desire as to the disposition of his property, he is not wanting in testamentary capacity and may execute his will. * * * If the testator had memory and mind enough to recollect the property he was about to bequeath, the persons to whom he wished to will it, and the manner of its disposition, he had in contemplation of law, a sound mind and great age, bodily infirmity and impaired mind will not vitiate a will made by a person possessing such capacity."

These instructions fully cover· the instructions sought by appellant in charge 6, refused by the court, and its refusal, though embodying a correct statement of the law, does not constitute reversible error.  Doullut & Williams v. Hoffman, 204 Ala. 33, 86 So. 73 ; 7 Southern Rep. Dig., Trials, § 260, and authorities cited.

██ Over the objections of the proponent that the question was "irrelevant, incompetent and immaterial and foreign to the issue in the case, and seeks illicit testimony that will shed no light on the matters involved in the suit," the contestant was allowed to ask the witness Dr. Naftel, on his direct examina-

tion, "and at the time, in your opinion as a medical man, was he capable of making a will, disposing of his property to his family?" and the witness to answer: "I do not *think* he was." It is now urged that this was error because of the form of the answer. The witness, in using the word "think," clearly meant this as his opinion. While it may be conceded that a witness, though qualified as an expert, may not express his opinion and conclusion on the very question to be submitted to the jury, involved a mixed question of law and fact (Dominick v. Randolph, 124 Ala. 557, 27 So. 481), this objection was not urged, and the court will not be put in error for overruling the general objection assigned to the question (Clark v. State, 217 Ala. 229, 115 So. 295). Moreover the treatment of the assignment of error in brief is that:

"The Court erred in allowing the witness Dr. Naftel to testify over proponent's objection that he did not 'think' testator was capable of making his will. See page 14."

This under the decided cases does not rise to the dignity of an insistence upon this assignment of error. Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604. The same is true as to the assignment of error based on the motion to exclude the testimony of this witness, and other assignments of error relating to admission of testimony.

▋ Testimony respecting the personal history of the testator, his conversation, deportment, appearances, and conduct toward the different members of his family, was relevant to the issues in the case, and was admitted without error. Batson v. Batson, supra.

▋ The question to the witness Bradley, "Do you know of any particular acts that would evince insanity?" does not appear to have been answered, and the ruling of the court in respect thereto, if error be conceded, is clearly without injury.

We find no reversible errors in the record. Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.