102 So.2d 16

**Mrs. Pierson Watkins STANLEY et al.**

v.

**Grover B. KELLEY et al.**

4 Div. 865.

Supreme Court of Alabama.

April 10, 1958.

Joe C. Cassády, Enterprise, Jas. G. Clower and Walter R. Byars, Troy, for appellants.

Poole & Poole, Greenville, Alton L. Turner, Luverne, and J. O. Sentell, Jr., Montgomery, for appellee.

MERRILL, Justice.

This case was originally assigned to another member of the court, but was reassigned to the writer on March 24, 1958.

This is the second contest of the will of Dr. M. L. Watkins, deceased. The first contest was filed by relatives other than appellants in the Probate Court of Crenshaw County. This cause was removed to circuit court, tried before a jury, with verdict in favor of the proponent, and appealed to this court where the appeal was dismissed. Watkins v. Kelley, 262 Ala. 524, 80 So.2d 247.

The instant contest was heard before the circuit court without a jury and again resulted in a decree sustaining the validity of the will.

Dr. Watkins was a bachelor, 80 years of age, and a general practitioner of medicine for many years in the Glenwood Community prior to his death on October 22,

1953. By his will, he left all his property to a neighbor, Grover B. Kelley, and his attorney at Luverne, Ben H. Lightfoot. Neither Kelley nor Lightfoot were related to Dr. Watkins.

The will was filed for probate on November 27, 1953, and on the next day, Mr. Lightfoot renounced all right or claim to the estate of M. L. Watkins and quitclaimed any interest he might have acquired under the will to the heirs at law of Dr. Watkins. Kelley, the proponent of the will, was a "handy man" for Dr. Watkins, driving him places, running errands, looking after him and serving as a companion. The contestants, appellants here, are a sister and a nephew of the testator.

■ The argument of the assignments of error in brief raise four questions. The first is that the court erred in holding the answer of the proponent to be sufficient. The contestant made a motion to set the answer down for a hearing to test its sufficiency. This procedure as to an answer has been rendered useless by the provisions of Equity Rule 25, Code 1940, Tit. 7 Appendix; Flowers v. Auto Mutual Indemnity Co., 236 Ala. 30, 180 So. 705. The court did not err in denying the motion.

■ The second point raised is that the will was not attested in the presence of the testator. Tit. 61, § 24, Code 1940, requires that a will be "attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator." It is argued that the will in the instant case was not attested within the scope of the testator's vision and was, therefore, not in compliance with the statute because not in his presence.

The will was attested by two brothers, Horace and Thomas Horn. Their undisputed testimony was that on a Thursday, they were both in Brantley. Thomas lived in Greenville and was supervisor of a bakery route and worked Brantley every other Thursday. Horace worked Brantley every

day for a candy company. They had known Dr. Watkins all their lives and no other doctor had ever treated them until they went into military service in World War II. On the day in question, Dr. Watkins was parked on the right side of the street, sitting on the right side of the front seat of his automobile. Thomas Horn was standing on the sidewalk talking to him. Horace came by, stopped, engaged in the conversation for a few minutes and started to leave when Dr. Watkins said, "Boys, how about witnessing my signature." He handed the paper bearing his signature to Thomas, who asked him, "Is that it?" Dr. Watkins replied "Yes." Thomas handed the paper to Horace who was standing about even with the back door of the automobile. Horace put the paper on an aluminum ticket pad he had in his hands and signed as a witness to Dr. Watkins' signature. He handed the pad and paper to Thomas who also signed. Both testified that Dr. Watkins could have seen Horace sign but neither testified that he actually turned around and looked at Horace when he signed his name. This was the only time they ever witnessed Dr. Watkins' signature and they identified their signatures on the will when it was offered for probate, although they did not know they were witnessing a will when they signed their names. Dr. Watkins was not under the influence of intoxicants at that time, nor was appellee Kelley around, near or within sight of the two witnesses.

We cannot agree that the will was not attested in the presence of the testator. It is not necessary to prove that testator actually saw the witnesses sign their names to the will. It is sufficient if, from their relative positions, he could see them. Allen v. Jones, 259 Ala. 98, 65 So.2d 217, quoting from Hill v. Barge, 12 Ala. 687.

■ Appellants next argue that the will was unattested at the time Dr. Watkins lay on his death bed in Troy, and that he could not have been in Brantley talking with the Horn brothers. The trial court saw and

heard the witnesses and resolved the conflict in the evidence in favor of the proponent of the will. Considerable evidence sustained his finding, and under the usual presumption, we will not disturb the finding. Casey v. Krump, 260 Ala. 280, 69 So.2d 864.

The last point raised is that a confidential relationship existed between Dr. Watkins and Kelley, and that there is a presumption of undue influence on the part of Kelley which was not rebutted. We quote from appellants' brief as to the relationship: "About two years prior to his [Watkins] death Grover B. Kelley, the proponent, moved into a house across the street from decedent. From then until the time of decedent's death the evidence is uncontroverted that Grover B. Kelley spent a large amount of his time with the decedent; he drove decedent around as his constant driving companion, carried him on trips, bought him beer and whiskey, cooked meals and carried them to the decedent, carried the decedent to the hospital at times when he was sick, bought property jointly with the decedent, received several large sums of money from decedent, and had decedent to sign checks payable to him or for his benefit. It is also shown that Kelley was a constant visitor in decedent's home and that he conducted, or participated in, gambling games in the home of decedent and that his losses in such games were financed by the decedent at the request of Kelley and while the decedent was under the influence of alcohol."

The evidence most favorable to the proponent relating to the preparation and execution of the will follows. On August 19, 1952, Kelley came to the office of Dr. Watkins' attorney, Mr. Ben Lightfoot, and informed him that Dr. Watkins wanted a will prepared leaving half his property to Kelley and half to Lightfoot. The will was prepared and given to Kelley. Sometime between that date and January 3, 1953, Dr. Watkins came into the office of C. C. Stone, an automobile dealer in Luverne who had previously practiced law, and asked him to

look at the will. At that time, it had not been signed. Mr. Stone explained that he could not give a legal opinion and Dr. Watkins stated that he just wanted Stone's interpretation of it. Stone read it and told him that "I thought that he was bequeathing half of his estate to Grover [Kelley] and half to Ben Lightfoot, with them as joint executors, I believe, and he just said he just wanted to know if that was all right and I said so far as I could tell it was all right." Other reputable witnesses heard the testator say at different times between 1952 and his death that he did not want any of his people to have anything that he had.

Witnesses for both sides testified that Dr. Watkins was a man of "very strong will," "almost dogmatic," "strong convictions," "strong determination," "strong mind and judgment," "contrary," who "would make his own decisions," had "considerable business experience," and did not "trust nobody much" and who could not be "shoved around." The evidence is uncontroverted that he was of sane mind.

■ When a will is contested on the ground of undue influence, the burden is on the contestant, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Hyde v. Norris, 250 Ala. 518, 35 So.2d 181. We do not think the appellants have successfully carried that burden.

■■ The controlling principle on the issue of undue influence is that the contestants must show active interference of the beneficiary in procuring the execution of the will. Lockridge v. Brown, 184 Ala. 106, 63 So. 524. To make out the charge, it must be proved that an influence was exerted on the testator which was tantamount to moral coercion and constrained him to do that which was against his will but which from fear, desire of peace, or some other feeling than affection, he was unable

to resist. Cox v. Martin, 250 Ala. 401, 34 So.2d 463; Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792. When tested by this principle, we cannot hold that the trial court erred in rejecting the claim of undue influence on the part of appellees.

■ A trial court's finding on the issue of undue influence in a will contest must be accorded all the presumptions of a jury verdict, and the judgment will not be overturned unless this court is clearly convinced that the finding is wrong and unjust. Allen v. Jones, 259 Ala. 98, 65 So.2d 217. We are not so convinced.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.