181 So.2d 85

**Andrula JOHNSON,**

v.

**Hillard HOWARD.**

**2 Div. 446.**

Supreme Court of Alabama.

Dec. 9, 1965.

18

Harry W. Gamble and J. E. Wilkinson, Jr., Selma, for appellant.

Pitts & Pitts, Selma, for appellee.

PER CURIAM.

The contestants of a will appeal from an adverse judgment of the Circuit Court of Dallas County, Alabama, wherein a jury rendered a verdict in favor of the proponent of the will of Mattie Douglas Johnson, known also as Mattie Jones.

The contestants, Andrula Johnson, a person of unsound mind, by Sam Lewis, as guardian, and Sam Lewis as guardian of Andrula Johnson, a person of unsound mind, contend, by appropriate pleadings, that the testatrix was mentally incompetent to make and execute a will on the 11th day of January, 1961, the date the will in question was executed; and also that the execution of said will was obtained by undue influence exercised over her by the two principal beneficiaries of said will; namely, Hillard Howard and his wife, Alberta Holmes Howard, one or both of them.

It appears that the testatrix, whom we will refer to as Mattie Jones, willed all of her Alabama real and personal property to the Howards, and $1.00 to a mentally retarded child, Andrula Johnson, approximately 48 years of age at the time.

Appellants here assert by assignment of error that the trial court erred in overruling their motion for a new trial. This assignment presents for consideration of this court all questions of law and fact sufficiently set forth in the motion and adequately argued on this appeal. Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358(8).

We will first consider grounds numbered 2 and 3 of the motion, as follows:

"2. For that the verdict of the jury is not sustained by the great preponderance of the evidence.

"3. For that the verdict of the jury is not sustained by the great preponderance of the evidence and is contrary to both the law and the facts in the case."

The evidence on the issue of testatrix's mental competency at the time she executed the will on January 11, 1961, is conflicting. It appears from the record before us that appellants introduced five witnesses who testified as to their knowledge of testatrix, and that she was a person of unsound mind, and also to facts and circumstances concerning testatrix from which the jury could infer such incompetency on the date in question.

Proponent of the will introduced eleven witnesses whose testimony tended to support proponent's contention that testatrix was mentally competent when she executed the will on January 11, 1961.

We here accord full recognition to the many pronouncements of this Court that jury verdicts are presumed to be correct and no ground of a new trial is more carefully scrutinized or more rigidly limited, than that the verdict is against the evidence. Smith v. Smith, 254 Ala. 404, 48 So.2d 546(5).

In view of this conflicting evidence, we are unwilling to disturb the verdict on the issue of mental competency. A delineation of the evidence on this issue would unnecessarily burden and lengthen this opinion.

Appellants insist that the will of testatrix was the product of undue influence exercised by the two principal beneficiaries, Hillard Howard and his wife. This insistence is not so devoid of merit as the issue of mental competency vel non.

The evidence shows that testatrix owned her home and two or three other houses and lots in the neighborhood of the home. This property was the subject of the will, but not some real property in Detroit, Michigan, which testatrix specially requested not to be included in the will.

On November 30, 1960, she had a joint savings account in a Selma bank in the sum of $3252.90, which she checked out and turned over to Alberta Howard on the same date. This savings account was in the name of Mattie Jones *or* Andrula Johnson. The withdrawal, less $350.90, was deposited to the account of Alice Howard, in the same bank on the same date. Alice Howard was the niece of the Howards. Some of this money was used by the Howards to repair the real property of the donor, Mattie Jones. A substantial amount of the withdrawal was used by Hillard Howard to buy cattle for himself.

It also appears from the evidence that at the time of the execution of the will, testatrix also executed and delivered a deed to the Howards that conveyed her real property in Selma. The Circuit Court of Dallas County vacated the deed. The proceedings concerning this real property were not introduced in evidence, but excerpts of Alberta Howard's testimony at this trial were admitted in evidence in the case at bar over the objection of proponent. The rulings of the trial court in the case at bar on the objections to the admission of this testimony are not before us.

These excerpts tended to show a course of conduct between the Howards and testatrix which appellants here contend, along with other testimony, establish a confidential relationship between the Howards and testatrix. The evidence was admitted to that end. The Howards in the case at bar did not take the witness stand. Alberta Howard testified in the former trial to set aside the deed that Mattie Jones talked to her first and told her what she wanted to do and "she recommended that we see somebody that know more about it than

we did and we went and talked to Mr. Zimmerman." After seeing Mr. Zimmerman, who employed Hillard Howard, they went to the office of Mr. Esco (the attorney who prepared the deed and will). Testatrix told him what she wanted done, and also discussed before witness the making of a will and a divorce from her husband. Mr. Esco, according to witness, subsequently prepared a deed and other instruments for her to sign. Further, Alberta Howard testified that Mr. Esco did not tell her that he did not want her or her husband present at the time Mattie Jones signed the instruments. Witness was present when the instruments were signed. Further, witness stated that "we" saw Mr. Esco several times before the instruments were signed. Witness did not remember that Mr. Esco told her to have testatrix come up to his office by herself in a taxicab and sign her will and deed. She didn't know that Mattie Jones came to Mr. Esco's office several times by herself.

Attorney Sam Esco, a witness, introduced by proponent of the will, testified that he had been representing Mattie Jones for about five years prior to January 11, 1961, the date the will was executed. At an interview on December 29, 1960, prior to the date of the execution of the will, he took down all the facts and placed them in his regular will information sheets. He saw her three different times between December 29, 1960 and January 11, 1961, and discussed with her about the will and how it was to be drawn. On January 11, 1961, testatrix came to his office in a taxicab, and on arrival she went to Mr. Esco's private office where he presented her with the prepared will. Testatrix read the will, studied it, and then discussed with him various provisions of the will. Mr. Esco explained to her the contents of the will. He then testified as to its execution.

Mr. Esco testified on cross-examination that at the time Mattie Jones executed the will he understood that Alberta Howard was in an outer office; she was not in his private office; that he sent a taxicab for Mattie Jones, and then put her in a taxicab and sent her home; that he called Mr. Zimmerman to come to his office; that Mattie Jones paid him for his legal services for preparing the will and the deed; and she insisted on various changes in the will. Further, he testified that he did not know if the Howards ever told him they were looking after Mattie Jones' property.

Witness James Zimmerman, called by proponent, testified as to Mattie Jones signing the will in his presence in the office of Mr. Esco; that no one else was present in the office where the will was signed except Mattie Jones and the three witnesses. Also, he stated that he had known Mattie Jones for 5, 6 or 7 years and Hillard Howard and his wife for 20 or 25 years; that he would see Mattie Jones two or three times a week, either in the pasture or in his store.

On cross-examination, he testified that he had seen the Howards and Mattie Jones together on his place; that they came to him a short while before he witnessed Mattie Jones' will and told him about Mattie Jones wanting to make a deed (no mention was made of a will) to her property to the Howards. He advised them to see Mr. Esco.

On further Re-direct Examination, witness testified that one of the Howards and Mattie Jones talked to him about making a deed. This was a short time before he witnessed the purported will. Mattie Jones wanted to convey her property to the Howards, but not her Detroit real property. Witness also testified that he did not know a deed was executed on the same date that the will was executed. Witness also testified about selling Hillard Howard some cattle for $1749.50 for which he received a check drawn by Alice Howard on the bank account created in her name by depositing the money that Mattie Jones had withdrawn from the joint bank account and delivered to the Howards.

While we have not delineated the entire testimony adduced at the trial of this will

contest, we think the above fairly depicts the evidence adduced on the issue of undue influence as a ground of contest. We do not deem it necessary to set out or narrate the testimony on the issue of insanity. We have carefully reviewed all the testimony and read the text of the same. We noted the conflicting evidence as to the mental state of Mattie Jones, before, at the time, and after the execution of the will. Suffice it to say, the jury resolved the mental issue in favor of proponent; also her mental condition favorably to proponent as it affects or sheds light on the issue of undue influence. The verdict of the jury was tantamount to a finding for proponent's contention that testatrix was not so weak mentally that she was a victim of undue influence on the part of the Howards.

The alleged mental weakness and senility vel non of testatrix before and at the time she executed the will were evidential factors on the issue of undue influence. This pronouncement comports with Coghill v. Kennedy, 119 Ala. 641, 24 So. 459 (11, 25), wherein we observed:

> " * * * It is always competent for the contestant to show what opportunities existed, or were created by the persons charged with the exercise of undue influence, for procuring the execution of a will in their favor. Hence it was competent to show that the husband of the testatrix, her natural protector, was of weak mind, and unable to protect her against the fraudulent designs of others, * * *."

By the same token it was competent for the contestant to show that the testatrix was of a weak mind and unable to protect herself against the fraudulent designs of others.

It is again to be observed from the alleged statements against interest on the part of Alberta Howard at the trial of the equity proceeding to set aside the deed from Mattie Jones to the Howards, that the witness Alberta Howard testified that testatrix "talked to me first and told me what she wanted to do and she recommended that we see somebody that know more about it than we did, and we went and talked to Mr. Zimmerman." This statement along with other evidence of the witness Alberta Howard was introduced by contestant, who vouched for its truth.

From this testimony, it is apparent that testatrix approached the witness with the suggestion that they find someone who knew more about what was to be done than they did. The suggestion was made to see Mr. Zimmerman. This contact was made. Mr. Zimmerman recommended Mr. Esco as a suitable lawyer to consult. So we observe that Alberta Howard was rendering help that Mattie Jones solicited.

We have held that in a contest of a will on the ground of undue influence there must be evidence of active interference by the beneficiary in procuring the execution of the will. Coghill v. Kennedy, 119 Ala. 641, 666, 24 So. 459; Lockridge v. Brown, 184 Ala. 106, 63 So. 524(5); Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792(4). This activity must be in procuring the execution of the will and more than an activity and interest referable to a compliance with or obedience to the voluntary and untrammelled directions of the testator. Kahalley v. Kahalley, supra. The fact that Alberta Howard went with testatrix to seek a lawyer to draw the will, does not within itself establish such undue activity on the part of Alberta Howard.

It might be inferable from Alberta Howard's testimony at the trial in the equity proceedings, part of which contestant introduced in the case at bar, that she was actually present in the room when the will was executed. She testified that she was present "at the time these instruments were signed." Mr. Esco and Mr. Zimmerman testified in the case at bar that she was not present in the room. Mr. Esco stated that she might have been on the outside in another room.

Be that as it may, the evidence is undisputed that testatrix of her own volition, after inquiry of Alberta Howard and Mr. Zimmerman, sought legal advice of Mr. Esco with respect to her will. Such advice was sought on two or three occasions before the will was actually signed. Final advice was sought when the will was executed. During these visits, she was neither senile nor weak-minded according to the tendency of proponent's evidence. The verdict of the jury indicates they were favorably impressed with this tendency.

When a will is contested on the grounds of undue influence, as here, the burden is on the contestant, in order to raise a presumption of undue influence, to prove dominant confidential relationship and undue activity in the execution of the will by or for a favored beneficiary. Stanley v. Kelley, 267 Ala. 379, 102 So.2d 16.

"With reference to the burden of proof on the issue of undue influence, the rule in respect to a will (not the same in transactions inter vivos), the burden is shifted to the favored beneficiary by evidence of confidential relations when there is proof of undue activity on his part in procuring its execution. * * *" Hubbard v. Moseley, 261 Ala. 683, 75 So.2d 658(1).

Further, this Court stated in Betz v. Lovell, 197 Ala. 239, 72 So. 500(3, 4):

"* * * but this burden of proof, once shifted to the donee by evidence of confidence and trust probably influencing the transaction, and, in the case of a will, by proof of some activity on the part of the beneficiary in procuring its execution, may be rebutted by proof that the donor had competent independent advice, or by other evidence sufficient to satisfy the judicial conscience that the transaction resulted from the voluntary and well-understood act of the donor. Jones v. Brooks, 184 Ala. 115, 63 So. 978; Scarbrough v. Scarbrough, 185 Ala. 468, 64 So. 105. * * *"

In the case of Cox v. Hale, 217 Ala. 46, 114 So. 465(11), this Court also observed:

" 'Undue influence' is a legal term, aptly chosen to cover, among others, cases of moral coercion, duress of mind, wherein the dominating will of another acquires supremacy, overcomes the free agency of the testator, and procures a document expressive of the will of such other person, and not that of the testator. Not inaptly have the writers of the law, seeking to define undue influence of this character, declared it must have the quality of coercion, and influence the equivalent of force or fear.

"Running through the whole law of undue influence of this character is the idea of constraint, control over the mind and act of the testator, the force of a dominating power, however obtained or exercised. It may take the form of fear—fear of the helpless or dependent for his comfort or safety; fear of the weak in mind to antagonize and incur the displeasure of those who have acquired a dominance over him."

On the question of undue influence in the execution of the will, the evidence was conflicting and was properly submitted to the jury, and the jury decided this question in favor of proponent.

It is recognized by this Court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the verdict is strengthened. Smith v. Smith, 254 Ala. 404(7), 48 So. 2d 546. New trials cannot be granted merely because the court sitting as a jury would have rendered a verdict different from that returned by the jury. Winter & Loeb v. Judkins, 106 Ala. 259, 17 So. 627 (2); Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 29 So.2d 298(7).

It is neither within the province of this Court to indulge in its own speculations and inferences from disputed evidence,

Barber Pure Milk Co. v. Holmes, 264 Ala. 45, 84 So.2d 345(13, 14), nor to engage in speculations as to why testatrix deemed it proper to cut off her retarded adult child by leaving her only $1.00. We cannot speculate as to why Mattie Jones withdrew the money from the bank—also subject to the daughter's withdrawal—and delivered the same to Alberta Howard. The jury was privileged to draw reasonable inferences from the whole of the evidence as to testatrix's motivations. Evidently, they found nothing adverse to the proponent on the issues created by the pleading.

■ Appellants' Assignment of Error No. 4 asserts error on the part of the trial court in sustaining proponent's objection to argument of counsel for contestant as follows:

"The evidence shows that these two negroes (referring to Hillard Howard and Alberta Howard) embezzled that money from Mattie Jones."

The argument, accusing the Howards of a criminal offense, was not germane to the issues of the case. The trial court's ruling was free from prejudicial error. "Much must be left, in the matter of an attorney's argument, to the enlightened judgment of the trial court, with presumptions in favor of its ruling." Occidental Life Insurance Co. of Cal. v. Nichols, 266 Ala. 521, 97 So. 2d 879(15).

■ Assignment No. 7 charges error on the part of the trial court in giving for proponent the following written charge:

"20. The burden of proof as to testamentary incapacity is on the contestants, and it is not shifted except by proof of the habitual and fixed insanity on the part of the testatrix prior to the making of the will."

This charge was held in Batson v. Batson, 217 Ala. 450(23), 117 So. 10, to have been properly refused as confusing to the right of the jury to consider the issue of insane delusion which was specially alleged in the bill of complaint. There was no such special issue in the case at bar.

The charge is an exact copy of Charge No. 15, which was approved in Eastis v. Montgomery, 95 Ala. 486, 11 So. 204, wherein there was an issue of testamentary incapacity as well as undue influence in the execution of the will. The eminent Justice McClellan, speaking for the Supreme Court, said:

"Charges 5, 12, 14 and 15, given at the instance of the proponents, to the effect or involving the ideas that testamentary incapacity is an incapacity existing contemporaneously with the execution of the alleged will; that the burden of proof as to such incapacity is upon the contestants, the original presumption of sanity and capacity being always indulged, and that this burden can only be discharged or shifted by showing prior habitual or fixed insanity or actual insanity or other incapacity at the date of the instrument,—are correct expositions of the law; as also is charge 9, which defines testamentary capacity. Leeper v. Taylor, 47 Ala. 221; Cotton v. Ulmer, 45 Ala. 378; Daniel v. Hill, 52 Ala. 430; O'Donnell v. Rodiger, 76 Ala. 222; Kramer v. Weinert, 81 Ala. 414, 1 So. 26."

■ Assignment of Error No. 8 predicates error to the trial court in giving at the request of proponent Charge No. 25, which is set out in the statement of the case.

The giving of this charge was free from error. This exposition of the law was approved by this Court in the case of West v. Arrington, 200 Ala. 420(7), 76 So. 352.

■ Assignment of Error No. 10 predicates reversal on giving for proponent a written charge, No. 29, which is set out in the reporter's statement of the case.

A like exposition of law (Written Charge 2) was approved by this Court in Snider v. Burks, 84 Ala. 53, 4 So. 225, paragraph 5 of the opinion.

24

■ Assignment of Error No. 11 complains that the court committed prejudicial error in giving for proponent Written Charge No. 30, as follows:

"30. The Court charges the jury that the true rule in matters of this sort is, however, feeble, weak-minded, capricious or notionate she may be, if she be able to have a decided and rational desire as to the disposition of her property, she is not wanting in testamentary capacity and may execute her will."

We note that the trial court orally charged the jury as follows:

"Now, the Court will define to you what is required to have testamentary capacity. All that the law requires is that the testator or testatrix should have memory or mind sufficient to recall the property she is about to bequeath or devise; the objects of her bounty; the disposition that she wishes to make of the property; to know and understand the nature and consequences of the business to be performed, and to discern the simple relations of its elements to each other.

"Now, if they have that mind and memory to do that, then they would have testamentary capacity; if they did not, they would not have testamentary capacity. If they have testamentary capacity, then a will executed by a person with testamentary capacity would be a valid will, so far as that element of this case is concerned, and if she did not have testamentary capacity, it would not be a valid will."

Written Charge No. 30, set out herein, when considered in connection with the trial court's above-quoted oral charge, was free from error. McLendon v. Stough, 218 Ala. 445, 118 So. 647(3); Dees v. Metts, 245 Ala. 370, 17 So.2d 137. It was subject to an explanatory charge if contestants so desired.

The judgment of the trial court is due to be affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.