321 So.2d 169

**HUBBARD BROS. CONSTRUCTION COM-
PANY, INC., a corporation**

v.

**C. F. HALSTEAD CONTRACTOR, INC.,
a corporation.**

**SC 908.**

Supreme Court of Alabama.

Sept. 25, 1975.

Rehearing Denied Nov. 6, 1975.

Jack Crenshaw, Montgomery, for appellee.

Beavers, May & DeBuys, Birmingham, for appellant.

BLOODWORTH, Justice.

The sole question presented by this appeal is whether the trial judge erred in granting defendant's motion for new trial. The motion contains the ground that the verdict is contrary to the great preponderance of the evidence. In ruling, the judge

gave no reason for his decision. The evidence was in conflict. We say that he did not err and affirm.

The facts upon which this appeal rests are stated in the dissenting opinion of Mr. Justice Jones and need not be repeated here.

From the second Monday in May, 1820, when the Supreme Court of Alabama first met at the capitol in Cahawba,[1] to this present day perhaps no principles of Alabama law have been more uniformly settled or more frequently cited than those pronounced in *Cobb v. Malone,* 92 Ala. 630, 9 So. 738 (1891).

In that leading case, Justice Clopton wrote for the Court, inter alia:

" * * * and lay down as rules for the guidance of this court, that the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict. * * * "

The reason for the rule is clearly stated.

"[The trial judge] has heard and *seen* the witnesses testify, *observed* their tone and demeanor, and *noticed* their candor, or convenient failure of memory, to avoid impeachment, or for other improper purpose. *The appellate court, possessing none of these aids and advantages,* and *receiving the evidence on paper only, is less qualified to determine what evidence* is unworthy of belief, *what weight* should be given to that which has been rejected by the jury, *and may give undue weight* to the testimony of some of the witnesses. * * * " [Our emphasis.]

Following the decision in *Cobb v. Malone,* this Court has laid down the rules respecting appellate review of rulings on motions for new trial. These rules have been followed in countless hundreds of our cases. Every present member of this Court has concurred in one or more. We would take this opportunity to reaffirm *Cobb v. Malone* and its progeny and to summarize those rules applicable to this present case.

■ 1. Granting or denying a new trial motion is a matter resting largely in the discretion of the trial judge and exercising it carries a presumption of correctness. *Johnson v. Hodge,* 291 Ala. 142, 279 So.2d 123 (1973); App. & Error ☞933(1), Vol. 2A, *Alabama Digest.*

■ 2. When the trial court grants a new trial motion, without specifying the grounds therefor, the ruling must be sustained on appeal if any good ground is presented by the motion. *Johnson v. Hodge,* supra; App. & Error ☞854(6), supra.

■ 3. When the trial court grants a new trial, without specifying the grounds therefor, and one of the grounds is that the verdict is contrary to the evidence, the appellate court presumes that it was because the trial court concluded the verdict was contrary to the great preponderance of the evidence or the verdict was unjust in the light of the evidence. *Jones v. Strange,* 289 Ala. 76, 265 So.2d 860 (1972); *Kennedy v. General Transport Company, Inc.,* 293 Ala. 455, 304 So.2d 896 (1975); App. & Error ☞933(1)(4), supra.

■ 4. In such circumstances as 3, the appellate court will not reverse the order granting a new trial unless it appears that the great weight of the evidence plainly and palpably shows the trial court was in error. *Jones v. Strange,* supra; App. & Error ☞1015(3), supra.

1. Minor, 1.

5. In such circumstances as 3, and where the evidence is in conflict and when, upon a review thereof, the appellate court cannot say that the great weight of the evidence plainly and palpably supports the jury's verdict or it is not convinced that the evidence plainly and palpably shows the trial court to be in error, then the order granting a new trial should not be disturbed. *ConAGRA, Inc. v. Masterson*, 290 Ala. 273, 276 So.2d 134 (1973); *Kennedy v. General Transport Company, Inc.*, supra; New Trial ⊕71, 72(9), Vol. 15A, *Alabama Digest*.

Almost sixty years ago, this Court settled the question as to the legal effect of the last sentence of Act No. 656, Acts 1915, p. 722 [now codified at Tit. 7, § 764, Code of Alabama 1940], that no presumption in favor of the correctness of the trial court's ruling in granting or refusing a new trial shall be indulged by the appellate court.

In *Hackett v. Cash,* 196 Ala. 403, 72 So. 52 (1916), this Court held, in an opinion authored by Chief Justice Anderson, that a similar provision of Act No. 722, Acts 1915, p. 824, was *not intended* to override a long line of decisions as to what weight should be accorded the trial judge's conclusion upon the facts. If it was so intended, it would constitute an "invasion of the judiciary," the Court held.

Just a year later in *Hatfield v. Riley,* 199 Ala. 388, 74 So. 380 (1917), this Court was faced squarely with the question as to the effect of this rule of presumption in favor of the trial court's ruling on motion for new trial. Justice Gardner wrote for the Court that, because the trial judge (in a jury trial) had the witnesses before him and had the advantage of observing their manner and demeanor on the stand, the presumption is in favor of his ruling on motion for new trial. He observed: "This rule has not been changed by recent legislative enactment. Acts 1915, p. 722." He then added: "The reasoning in the cases of *Hackett v. Cash,* 196 Ala. 403, 72 So. 52, and *Finney v. Studebaker,* 196 Ala. 422, 72 So. 54, applies to the above cited act." These cases clearly demonstrate that the legislative addition to the Code by the enactment of Act 656, Acts 1915, p. 722, has not been overlooked by subsequent courts applying Cobb's rule.

The case of *Castleberry v. Morgan,* 28 Ala.App. 70, 178 So. 823 (1938), cited in Justice Jones' dissent, insofar as it may conflict with these rules has been expressly disapproved by this Court. See *Adams v. Lanier,* 283 Ala. 321, 216 So.2d 713 (1968) (Per Coleman, J.).

It would seem almost aphorismic to add that, in exercising the power to set aside verdicts, trial courts

" * * * should be careful not to infringe the right of trial by jury, and should bear in mind, that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and find the facts."

In cases such as the instant case, where the evidence was in conflict and the trial judge granted a new trial without specifying the grounds but one of the grounds asserted by the movant was that the verdict is contrary to the great preponderance of the evidence, it is presumed that it was granted for that reason. The order should be affirmed because, upon a review of the evidence, it cannot be said that the great weight of the evidence plainly and palpably supports the jury's verdict. Authorities, supra.

Affirmed.

MERRILL, MADDOX, ALMON, SHORES and EMBRY, JJ., concur.

HEFLIN, C. J., and FAULKNER and JONES, JJ., dissent.

JONES, Justice (dissenting).

I respectfully dissent.

The scope of appellate review of an order granting a motion for a new trial following a jury verdict is in dire need of modification and clarification. This appeal presents a classical opportunity for such effort. Any re-examination of the guidelines for the exercise of the discretionary power of the trial court to set aside a jury verdict must begin with the premise that the right of trial by jury is constitutionally mandated. Substantive due process of law is violated when this fundamental right is infringed.

A full statement of the case, as well as the factual context in which the issue presented arises, is necessary as a basis for my reasons for differing with the majority.

Hubbard Brothers Construction Company, Inc., (plaintiff-appellant) claims damages against C. F. Halstead Contractor, Inc., (defendant-appellee) for work and labor done on account and for breach ·of written contract. Halstead counterclaims for damages incurred in remedying the alleged defects in the work performed by Hubbard.

The jury returned a verdict in favor of Hubbard and against Halstead in the sum of $25,755.90. The maximum recovery allowable under the evidence, including interest, is $24,216.15. Thus, the award exceeds the maximum allowable recovery by $1,539.75. Hubbard attributes this excess to an inadvertent mistake by the jury in computing the interest due on the principal.

Hubbard now appeals, alleging that the trial Judge erroneously granted Halstead's motion for a new trial.

Hubbard is a framing contractor and Halstead is a general contractor. Their contract called for Hubbard to furnish all of the labor and equipment necessary to perform the carpentry work on a 320-unit apartment complex known as the Cedarbrook South Apartments. Under the contract, Halstead possessed the right to terminate Hubbard's employment should he fail to prosecute this work with diligence, efficiency, and promptness.

The controversy centers upon the end product of Hubbard's workmanship on the apartments, which included, among other things, crooked and leaning walls, floors, roofs and cabinets. Hubbard, although he admits that such was the end result of his carpentry, attributes the defects to his being forced to build on foundations which were incorrectly poured and thus resulted in his poor work product. Hubbard also alleges that Halstead was informed of the defective construction of the foundation, but that Halstead directed him to do the best he could under the circumstances.

Halstead's witnesses testified that it was quite common for foundations to be a "little off", but that the foundations in question were off to such a small degree that any skilled carpenter could have corrected the problem with a minimum of effort.

On the whole, both parties presented considerable testimony and other evidence tending to support their respective position. At the close of the trial, the jury, as the trier of the facts, was faced with a situation in which the posture of the evidence made a verdict for either side equally possible. The sole issue presented for our review is whether the trial Court abused its discretion in granting Halstead's motion for a new trial.

I would hold such a ruling was an abuse of discretion and reverse and remand this cause with instructions to enter an order overruling the motion for a new trial on the condition that Hubbard file within 30 days a remittitur equal to the sum in excess of the maximum amount of recovery warranted by the evidence, otherwise to grant a new trial.

Halstead's motion for a new trial contained six numbered grounds which

claimed the two following substantive errors under Tit. 7, § 276, Code:

1. That the verdict was contrary to the great preponderance of the evidence.

2. That the amount of damages awarded by the jury was excessive.

The power of a trial judge to set aside an improper verdict and enter an order for a new trial is inherent in courts of common law jurisdiction. *Cobb v. Malone & Collins,* 92 Ala. 630, 9 So. 738 (1891). In principle, this power provides a safety valve in the judicial system by allowing the court to avoid any potential injustice which may result from a jury's bias, prejudice, passion, sympathy, or mistaken view of the merits of a case. *Carlisle v. Miller,* 275 Ala. 440, 155 So.2d 689 (1963).

It does not, however, grant to the trial judge an unbridled discretion to veto the verdict of a jury and substitute his own opinion on the weight of the evidence or the excessiveness of the damages. *Johnson v. Howard,* 279 Ala. 16, 181 So.2d 85 (1965); *W. M. Templeton & Son v. David,* 233 Ala. 616, 173 So. 231 (1937); *Winter & Loeb v. Judkins,* 106 Ala. 259, 17 So. 627 (1895); *Cobb v. Malone & Collins,* supra. To temper the trial judge's potential to disrupt the well considered judgments of impartial jurors, guidelines of restraint have been judicially developed and interposed between the sanctity of the verdict and the power to grant new trials. These guidelines are to be used not only by the trial judge in gauging his own authority to grant new trials, but also by the appellate court in reviewing. the record for possible abuses of discretion.

In cases such as the instant one, where the trial judge gives no reasons for his order granting the motion for a new trial, the appellate court must affirm if any of the grounds set forth in the motion is sufficient. *Johnson v. Hodge,* 291 Ala. 142, 279 So.2d 123 (1973); *Shepherd v. Southern Railway Company,* 288 Ala. 50, 256 So.2d 883 (1970); *City of Tuscaloosa v. Townsend,* 274 Ala. 268, 147 So.2d 824 (1962).

Also, when a trial court grants a motion for a new trial without assigning a specific ground, this Court indulges the presumption that it was because the trial court concluded that the verdict was unjust in light of the evidence. *Jones v. Strange,* 289 Ala. 76, 265 So.2d 860 (1972); *Boyd v. Shaw,* 287 Ala. 26, 247 So.2d 116 (1971). We will, therefore, first address the issue of whether the ground that "the verdict was not sustained by the great preponderance of the evidence" is sufficient to grant the appellee's motion for new trial.

The development of Alabama case law on the review of new trial orders generally, and of new trial orders based on the ground that the verdict was contrary to the evidence especially, began with the 1891 case of *Cobb v. Malone & Collins,* supra. Prior to 1891, decisions granting or refusing new trials were not reviewable. *Barr v. White,* 2 Port. 342 (1835) and *Spence v. Tuggle,* 10 Ala. 538 (1846). At that time, a statute was passed (Acts 1890–91, 779 now encompassed in Tit. 7, § 764) which abrogated this rule and provided that decisions on new trial motions were reviewable by appellate courts.

*Cobb* was the first case to construe this statute and·it has been relied on by many subsequent courts facing the issue of the scope of review of new trial orders. I believe, however, that the authority of *Cobb* is not universally applicable to every new trial situation and that some rethinking of its doctrines, as subsequently interpreted and applied, is in order.

Initially, it is important to note that *Cobb* was an appeal from a refusal to grant a new trial and the most carefully drafted portions of the opinion deal with that issue rather than the review of an order granting a new trial. On the limits of the trial court's discretion, Justice Clopton, for the Court, first explains that the purpose behind the power to grant new trials is "to prevent irreparable injustice in cases

where a verdict wholly wrong is the result of inadvertence, forgetfulness, or intentional or capricious disregard of the testimony, or of bias or prejudice, on the part of the juries . . ."

He then admonishes the trial judge that "in exercising the power, the court should be careful not to infringe the right of trial by jury, and should bear in mind, that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and find the facts . . . . no ground of new trial is more carefully scrutined or more rigidly limited, than that the verdict is against the evidence."

After this aspirational introduction, Justice Clopton explicitly states that "when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court, as to the weight of the testimony, or because it is against the mere preponderance of the evidence." This is a sound instruction, which is necessary to prevent the trial judge's unreasonable infringement upon the right to jury trial.

In the years since these statements of Justice Clopton, two rules have evolved to guide trial judges in granting motions for new trials. The first rule is axiomatic. If there is no evidence to support the verdict returned, a new trial must be granted because the case should not have gone to the jury initially. On the power of the trial judge to direct a verdict when there is no evidence tending to establish a party's case, see: *Stonewall Insurance Company v. Lowe,* 291 Ala. 548, 284 So.2d 254 (1973); *Tuskegee Auto Parts v. Dixie Highway Express, Inc.,* 276 Ala. 1, 158 So.2d 645 (1963); *Alabama Produce Co. v. Smith,* 224 Ala. 688, 141 So. 674 (1932).

The second rule involves the discretion of the judge in that narrow area of cases, where, although there was some evidence to support the verdict, the totality of the case indicates that the verdict returned was so greatly opposed to the weight of the evidence as to cause irreparable injustice. *Water Works and Sanitary Sewer Board of the City of Montgomery v. Norman,* 282 Ala. 41, 208 So.2d 788 (1968); *Castleberry v. Morgan,* 28 Ala.App. 70, 178 So. 823 (1938); *Atlantic Coast Line R. Co. v. Burkett,* 207 Ala. 344, 92 So. 456 (1922). Both are good rules and worthy of reaffirmation.

The rule set forth in *Cobb* concerning appellate review of decisions refusing to grant new trials is also sound: "When the presiding judge refuses to grant a new trial, the presumption in favor of the correctness of the verdict is thereby strengthened." Such a rule is the logical mandate of the policy to sustain jury verdicts unless they would result in irreparable injustice. Since the jury verdict alone is to be given such high credence, it follows that the concurrence of a presiding judge, who also had an opportunity to observe the demeanor of witnesses and examine evidence, must enhance the presumption that the verdict is correct.

The issue of the scope of review of orders granting a new trial was not before the *Cobb* Court and its summary treatment of that problem was mere dictum. The Court announced that "decisions granting new trials will not be reversed unless the evidence plainly and palpably supports the verdict." In retrospect, this language was unfortunate because it has been misinterpreted to mean that the verdict must be greatly, or even overwhelmingly, supported by the evidence. A re-examination of the *Cobb* language immediately preceding this statement of the rule reveals that the Court expressly analogized the situation at hand to the prevailing rule in a non-jury trial. The common law rule for review of ore tenus trials was "not to reverse the finding, unless it is so manifestly against the evidence, that a judge at nisi prius would set aside the verdict of a jury, rendered on the same testimony." *Nooe's Ex-*

*ecutor v. Garner's Adm'r.,* 70 Ala. 443 (1881).

This is a reasonable rule to apply to the ore tenus trial situation because when a judge sits without a jury, then, he, like a jury, is the trier of fact. It is his opinion on the credibility of witnesses and comparative weight of evidence that determines the outcome of the litigation. The law, in such cases, has entrusted the trial judge with two distinct functions. First, he is to use his common knowledge of human events and his sensory perceptions of evidence to determine, to the best of his ability, the true facts of the case. Then, he is to use the skills and learning of his profession to apply those facts to the law and thereby obtain a legal conclusion which is the judgment he renders.

The case at hand, however, presents quite different considerations. Here, the trial Judge has overturned the verdict of the ultimate trier of fact—the jury. His decision must be evaluated, not as the decision of an alternate trier of fact, which he is not, but rather as the decision of a presiding judge who is legally vested with carefully circumscribed discretion.

While case law application and interpretation has rendered *Cobb's* ore tenus analogy unfortunate, I am convinced from the full context of the opinion, that Justice Clopton did not intend to formulate a double standard for review of new trial orders. The absolutism of the presumption of correctness of the trial court's ruling whether to grant or deny a motion for a new trial is philosophically inconsistent with the sanctity of jury verdicts. On the one hand, the sanctity of the jury verdict is enhanced by the presumption favoring the trial court's ruling in denying a motion for a new trial. But, where the presumption of correctness is so absolute as to render the power of review impotent, the trial court's order granting a motion for a new trial effectively transfers this sanctity from the jury verdict to the trial judge.

The words "plainly and palpably" in the phrase "unless the evidence plainly and palpably supports the verdict" are the root of the problem. These words have been perverted into a quantitative test for the weighing of evidence. Taken for their literal meaning and, in the full context of the *Cobb* opinion, they mean just what Webster's dictionary says they mean, "easily perceivable to the mind". By a mere substitution of the literal definition of the words "plainly and palpably", the rule enunciated in *Cobb* may be otherwise stated: An order granting a motion for a new trial will be reversed for abuse of discretion where on review it is easily perceivable to the mind from the record that the jury verdict is supported by the evidence.

The legislative amendment of the statute interpreted by the *Cobb* Court—Acts of Alabama, 1915, p. 722, Tit. 7, § 764, Code —deserves comment. This amendment reads, "And no presumption in favor of the correctness of the judgment of the court appealed from shall be indulged by the appellate court." By increasing the evidential burden of sustaining a jury verdict when a motion for a new trial is granted, the *Cobb* rule, as interpreted by subsequent cases, does exactly what the legislature explicitly stated shall not be done—it indulges a "presumption in favor of the correctness of the judgment of the court appealed from."

It was my initial impression that the exercise by the Court of this legislative grant of power of appellate review of new trial orders should not be on a pick and choose basis, resulting in the abrogation of the conditions and restrictions implicit in the grant of such power. On further deliberation, however, I am convinced that this initial impression was erroneous. A grant of power of appellate review was an exclusive legislative prerogative. To exceed this prerogative and prescribe the scope of review is a violation of the separation of powers doctrine, and I am convinced that there is nothing inconsistent in the Court's

acceptance and exercise of this grant of authority of appellate review of new trial orders on the one hand and the rejection of the legislative conditions and restrictions respecting that review on the other.

Having said this, however, I believe the exercise of the judicial prerogative to prescribe the scope of review is clearly compatible (in its goal if not in its means) with the policy expressed by the legislative admonition of no presumption in favor of the correctness of the trial court. Before proceeding to a discussion of what I believe is a proper expression of this judicial prerogative, I would pause to emphasize that whatever degree of compatibility may exist between my concept of this scope of review and that which is legislatively expressed by the amendment referred to above is purely coincidental and is neither necessitated nor compelled by such legislative expression. It was the evident concern of the legislature that the unchecked power to grant new trials threatened to disrupt the jury system. This concern, implicitly contained in the original grant of the power of review and explicitly set out by the amendment, leads me in the same general direction, though I would seek the end result through somewhat different means.

We start, then, with the proposition that, although the legislative attempt to prescribe the ground rules exceeded its prerogative, the judiciary in the rightful exercise of its prerogative as to the scope of review should aim for the same constitutionally mandated goal—preserving the right of trial by jury.

This does not mean that the "no presumption" rule is necessary or proper to accomplish this result. Literally interpreted, the legislative proscription would have affected a de novo review, stripping the trial court of all discretion. I believe the correct rule lies somewhere between these two extremes. The rule long adhered to by this Court, and now reaffirmed by this opinion, in effect renders futile all efforts

to review an order granting a new trial where there is *any* evidence to support a verdict contrary to that rendered by the jury. Indeed, my research fails to disclose any such reversal in the Alabama Reports.

On the other hand, the legislative "de novo appeal" asserts the other extreme by proscribing any "presumption of correctness." It seems to me that the extremities of each position decry its own incorrectness. I submit there is a middle ground, fully cognizant of the ultimate legislative intent and judicially protective of constitutional guarantees.

The correct rule, it seems to me, would recognize that motions for a new trial are generally addressed to the sound judicial discretion of the judge who presided over the trial; and, concomitant with this discretion, an order granting a new trial on a sufficiency or weight of the evidence ground would be favored with a presumption of correctness. But, consistent with the principle of judicial discretion generally, its exercise is subject to abuse, and its abuse is reversible upon review.

The guidelines for the exercise of this discretionary power to grant new trials are neither difficult nor novel in Alabama. The correct rule was eloquently articulated by Judge Samford in *Castleberry v. Morgan,* supra:

> "when the trial judge sets aside the verdict, upon motion on the ground that it is contrary to the evidence, it places the judgment of one man, who is not charged with the duty of fact finding, against the judgment of twelve men, equally honest, equally obligated, whose duty it is to find the facts as to a particular transaction; and when the trial judge does exercise the power to set aside the verdict of a jury, it must appear, from the evidence, that the verdict was not only against the weight of the evidence, but so much so as at first blush, to shock our sense of justice and right."

There is an implicit thread running throughout the majority opinion to the effect that logic requires the same presumption of correctness with respect to the trial court's granting or denying a motion for a new trial on the weight of the evidence ground. I can only observe that the immediacy of logic is transcended by the higher constitutional admonition against infringement of the right to trial by jury. After all, logic, like beauty, is so often in the eyes of the beholder.

I would reverse and remand on the condition of a remittitur to comport to the evidence on the issue of damages.

HEFLIN, C. J., and FAULKNER, J., concur.

FAULKNER, Justice (dissenting).

I concur in the dissent of Mr. Justice Jones. I write this only for the purpose of asking a question, to wit, "Will the Judge who knows the meaning of the words "plainly and palpably" please stand up?" The Third New International Dictionary defines the adverb "palpably" as capable of being palpable. "Palpable" is defined as *capable of being touched or felt*, and *perceptible to the sense of touch*. "Palp" comes from the Latin "palpare," meaning *to stroke or to caress*.

I can understand "plainly." This word is used a "right smart" by folks who grew up in rural areas of the South. "Plainly" means *distinctly*, or *clearly*. So, when the words "plainly and palpably" are used to describe the "weight of the evidence," does that mean the evidence is "clearly touching" or "distinctly caressing?"

The words "plainly and palpably" are about as pleasing to me as my having a good case of prickly heat. Surely, more descriptive, and meaningful, words can be found to say how much evidence is necessary to support a jury verdict.

At this point in time, there is really no sound reason for having the *Cobb v. Ma-* *lone* rule. If the trial judge who grants or denies the motion for new trial has the courage to state his reason or reasons for doing so, we will not have to resort to this charade.