321 So.2d 178

Gene HARGRAVE

v.

DAVIS–HUNT COTTON COMPANY, a corp.

SC 1314.

Supreme Court of Alabama.

Sept. 25, 1975.

698

Patton, Latham & Legge, Athens, for appellant.

William E. Shinn, Jr., Decatur, for appellee.

PER CURIAM.

This appeal involves a "cotton output" contract between the Davis-Hunt Cotton Company, Inc. (appellee) and Gene Hargrave (appellant) wherein Davis-Hunt claims $52,810.50 damages for breach of contract.

Under the contract, Hargrave agreed to sell Davis-Hunt all of the cotton he produced during 1973, and ginned before December 16, 1973, at a price of 30 cents per pound. Hargrave produced a total of 721 bales of cotton during the 1973 season, of which 212 bales, weighing 105,621 pounds, were not delivered to Davis-Hunt.

The jury returned a verdict in favor of Davis-Hunt in the amount of $9,000 and the trial court, on Davis-Hunt's motion, granted a new trial. The principal thrust of Davis-Hunt's motion, which contained 23 numbered grounds, was that the verdict was contrary to the evidence or contrary to the weight of the evidence.

The order of the trial court granting the motion states in pertinent part:

"As the court views the evidence in this case the jury might have found that the plaintiff was not entitled to recover; but, finding that the plaintiff was entitled to recover, the court is of the opinion that the evidence does not support the verdict as to the damages. The amount of damages set appears to have been a result of error or compromise."

The issue presented by this appeal is whether the trial court committed reversible error in granting Davis-Hunt's motion for new trial upon the grounds stated or upon any other good grounds.

We hold that the trial court was not in error and, accordingly, we affirm its decision.

Briefly summarized, the facts are as follows: The duration of the contract was from April, 1973, to December 15, 1973. During this period the price of cotton rose dramatically from 32 cents per pound to more than 80 cents per pound. It appears that under the normal trade practice, cotton is taken to be ginned as soon as it is picked, which usually takes a day or two at the most. Thus, the evidence introduced by both sides centered along the lines of whether Hargrave had valid excuses for failing to get his cotton ginned before the December 15 deadline or whether he purposefully delayed such ginning in order to render the cotton unacceptable to the contract, thereby freeing it for sale to other cotton brokers at a higher price.

In 1973, Hargrave farmed the Hill place and the McCrary place, the arrangement being that he would pay the owner of each farm ⅓ of the cotton he produced during that year. The record of the local ginning facility indicated that the cotton from the Hill place, which was delivered to Davis-Hunt by Hargrave pursuant to the contract, was ginned on November 18, 1973. The cotton given to McCrary for his share was last ginned on November 24, while the cotton registered in Hargrave's name, produced on the McCrary place, was ginned as follows: on December 1, three bales; on December 8, twelve bales; on December 12, nine bales; and on December 28, December 29, January 3, and January 4, two-hundred-twelve bales.

During 1973, Hargrave decided he would alter his usual procedure by using a module maker instead of loading the picked cotton into trailers for transport to the cotton gin. Under the new procedure, cotton was picked, compacted into large bales of seed cotton, and placed on pallets, located

at the ends of the rows. Each pallet was capable of holding about 10 bales of cotton. Witnesses for Davis-Hunt testified that they visited Hargrave on December 1 because they were concerned over the small amount of cotton received from him thus far. At that time, there were 19 pallets containing cotton on the edges of the fields.

To justify his delay in performing the contract, Hargrave introduced the following evidence;

1. that the use of pallets made the ginning process slower and more difficult;

2. that the module maker increases the grade of cotton and requires fewer employees than the more conventional methods of picking cotton; and

3. that the large amount of rain in 1973 caused a delay in the growing season of about three weeks compared to the same period for 1972.

During the 1973 season, Hargrave sold the cotton ginned before December 15 to Davis-Hunt for $44,000 at 30 cents per pound, and sold that ginned after December 15 to the Bluff City Cotton Company for $63,000 at 62 cents per pound.

Thus, Davis-Hunt contends that the weight of the evidence demonstrates that Hargrave deliberately procrastinated in having his cotton ginned in order to sell it at a higher price than that agreed to in the contract. On the other hand, Hargrave contends that the evidence as to the late growing season, bad weather, and difficulty of ginning the cotton from the pallets excused the bulk of his tardiness in getting the cotton ginned and that the jury was justified in finding that Davis-Hunt had only been damaged to the extent of $9,000.

We affirm the trial judge in his conclusion that the evidence did not support the verdict and that the amount of damages awarded by the jury was the result of error or compromise.

■ The applicable rule of our decisions, in such cases as this, is that this court will not reverse the trial judge's order granting a new trial unless we are convinced, upon a review of the evidence, that it *plainly* and *palpably supports* the jury's verdict or plainly and palpably shows the trial court to be in error. *Cobb v. Malone*, infra; New Trial ⚎ 71, 72(9), Vol. 15A, *Alabama Digest*.

In *Hubbard v. Halstead* (1975), 294 Ala. 688, 321 So.2d 169, released concurrently with this opinion, this Court has reaffirmed the long established principles of *Cobb v. Malone*, 92 Ala. 630, 9 So. 738 (1891). The rules governing our review of orders granting motions for new trial are therein stated and need not be repeated here.

It seems crystal clear, from a careful consideration of the evidence in this cause, that it cannot be said to plainly and palpably support the jury's verdict. In view of a retrial of this cause, we think it would not be appropriate to discuss the evidence in any more detail than appears herein.

Davis-Hunt argues that it was entitled to a substantial verdict or to no verdict at all and asserts that this view was shared by the trial judge. This may have been the trial court's view, but it is not necessary to make that determination.

Under the court's oral charge (which the jury was bound to follow) the jury was charged that if Davis-Hunt was entitled to recover, its damages would amount to the difference between the contract price of the undelivered cotton and the market price on December 18, 1973. The jury was charged that they would have to look to the evidence "to see how much that is"— the "undelivered cotton." Davis-Hunt contends, and the transcript supports it, that there was no evidence as to which of the 212 bales less than all of them, were delayed because of "bad faith." To conclude otherwise would result in a verdict based on mere speculation and conjecture.

■ If a verdict is not justified on some reasonable hypothesis presented by the evidence under the court's instructions, then it cannot stand. *S. D. Winn Cigar Co. v. Wilson*, 35 Ala.App. 466, 48 So.2d 64 (1950) (per Harwood, J.).

■ When it appears the verdict cannot be sustained on any reasonable hypothesis of fact founded on the evidence, the verdict must be held to have been the result of compromise or mistake and must be set aside. *Holcomb & Bowden et al. v. Reynolds*, 200 Ala. 190, 75 So. 938 (1917). Here, the trial judge found the verdict was the result of such "error or compromise."

■■ Of course, the trial judge is not permitted to set aside the verdict because, in his opinion, the jury gave too little or too much. However, under the rule of our cases, once he does so, his order will not be reversed unless the evidence plainly and palpably supports the verdict.

It is therefore that we affirm the order granting the plaintiff Davis-Hunt a new trial.

Affirmed.

MERRILL, BLOODWORTH, MADDOX, ALMON, SHORES and EMBRY, JJ., concur.

HEFLIN, C. J., concurs specially.

FAULKNER and JONES, JJ., dissent.

HEFLIN, Chief Justice (concurring in result):

I would affirm the trial judge. While I am in agreement with Justice Jones' concept of the scope of appellate review when a trial judge grants a motion for a new trial, I am convinced that the trial judge did not abuse his discretion in this case. I am of the opinion that the jury verdict must have been the result of mistake or compromise and, therefore, must be set aside. *Holcomb & Bowden v. Reynolds*, 200 Ala. 190, 75 So. 938 (1917).

JONES, Justice (dissenting):

I respectfully dissent. See my dissenting opinion in *Hubbard v. Halstead*, 294 Ala. 688, 321 So.2d 169.

When, as here, the new trial order is based on the assigned ground that the verdict is contrary to the great preponderance of the evidence, the common law standard applicable to the presiding judge is that the verdict must be sustained if there is "evidence on both sides or some evidence to support the verdict." [1] *Cobb v. Malone & Collins*, 92 Ala. 630, 9 So. 738 (1891).

In this case, the $9,000 verdict was substantially lower than the relief demanded by the appellee, but this fact alone is not a sufficient basis for granting a motion for new trial. The evidence introduced on the desirability of implementing module makers and the evidence that an unusually large amount of rain delayed the crop three weeks were facets which the jury could properly consider in determining what proportion of damage to Davis-Hunt was attributable to Hargrave's unreasonable delay.

Admittedly, the record reveals that no single witness's testimony supports a $9,000 verdict. Indeed, the tendencies of the evidence adduced by Davis-Hunt support a $52,810.50 verdict for the plaintiff, while the tendencies of the evidence adduced by Hargrave support a verdict for the defendant—no recovery. The trial Court's order granting a new trial has the effect of holding that the jury was bound to accept the whole of the contention of one side or the other. I cannot agree.

The jury was free—to be sure, it was obligated—to sift from the whole of the evidence the truth; and, in its effort to find the truth, the jury may accept any

1. The trial Judge did not base his order on the ground discussed in *Hubbard v. Halstead*, supra, that the verdict was manifestly unjust, and I agree that that ground is not applicable.

part and reject any part of any witness's testimony. This fact finding prerogative was clearly defined in the Court's oral instructions to the jury.

Here, the jury found that the truth lay somewhere between the all or nothing contentions of the parties; and, in my opinion, the evidence supports its right to so find.

It is important to remember that it is not the role of the presiding judge to re-examine the facts of each case and decide whether the jury has returned the best of all possible verdicts; his role is only to make sure that the jury has based its verdict on some evidence properly before it.

I would reverse and remand.

FAULKNER, J., concurs.