336 So.2d 148 (1976)
Louise L. BETHUNE et al.
v.
CITY OF MOUNTAIN BROOK, a Municipal Corp.
SC 1456.
Supreme Court of Alabama.
July 2, 1976.
Rehearing Denied August 20, 1976.
Donald L. Collins and A. Eric Johnston, Birmingham, for appellants.
J. M. Breckenridge, Michael C. Quillen and L. Vastine Stabler Jr., Birmingham, for appellee.
SHORES, Justice.
The issues raised on this appeal are set out at length in Justice Maddox' dissenting opinion.
We affirm the trial court in granting the City of Mountain Brook's motion for a new trial. See Hubbard Bros. Const. Co., Inc. v. C. F. Halstead Contractor, Inc., 294 Ala. 688, 321 So.2d 169 (1975).
The trial judge was of the opinion that ". . . the overwhelming evidence is against the plaintiff on each of the issues. . ." Therefore, to reverse the order granting the motion for a new trial, we must find that the great weight of the evidence ". . . plainly and palpably supports the verdict, which means that we will not reverse in such case unless the evidence presented at trial plainly and palpably shows that the trial court was in error." Jones v. Strange, 289 Ala. 76, 79, 265 So.2d 860, 862 (1972).
*149 The court noted in the prior appeal of this case, Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974), that there were many disputed facts surrounding the execution of the contract between the Board of Education and the plaintiffs and the role of the City of Mountain Brook in connection with this contract. We held summary judgment was inappropriate. In reviewing the evidence adduced after a full trial of this cause, we are not led inescapably to the conclusion that the trial court was plainly and palpably wrong in granting the motion for a new trial.
Another reason given by the trial court for granting the motion for a new trial was the conduct of counsel for the plaintiffs in engaging in "grossly improper and highly prejudicial" final argument. The trial court cited specific instances of what it considered improper argument and found the effect of the statements to be ineradicable. We have held on numerous times that ". . . the action of the court in granting a motion for a new trial cannot be based upon argument of counsel, unless the remarks are grossly improper and highly prejudicial to the opposing party." Louisville & Nashville R. Co. v. Sullivan Timber Co., 126 Ala. 95, 104, 27 So. 760, 763 (1899). In this regard, much is left to the discretion of the trial judge. As this court said in Taylor v. Brownell-O'Hear Pontiac Co., 265 Ala. 468, 469, 91 So.2d 828, 829 (1957):
"The trial judge was present and was in a position to observe the manner of counsel and the countenance and expressions of the jury and the things complained of which transpired. In other words, the trial court, in acting upon the motion, was in possession of data and circumstances which are not and could not be presented by the record to this court. For this reason, we cannot disturb the conclusion reached unless we can say that it affirmatively appears from the great weight of the evidence and the surrounding facts and circumstances that this conduct did not influence the jury in the rendition of the verdict either as to result or amount . . ."
While we might be constrained to agree with the trial judge that the cumulative effect of the improper argument demands a new trial, we cannot apply, on review, the same test as did the trial court. Before it was data which we do not and cannot have. We must determine whether it affirmatively appears from the great weight of evidence and surrounding facts and circumstances that the improper argument did not influence the jury. The record is devoid of any such affirmative showing. Therefore, the judgment of the trial court in granting the City's motion for a new trial is affirmed.
AFFIRMED.
HEFLIN, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.
MADDOX, FAULKNER and JONES, JJ., dissent.
MADDOX, Justice (dissenting).
This case is here on appeal for the second time. In this Court's prior decision, Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974), the questions raised were stated as follows:
"1. Can a municipality agree to permit a real estate developer to file a subdivision plat at a later time?
"2. Can a municipality enter into an oral agreement?
"3. Were there disputed material facts presented which would prevent the entry of a summary judgment?
"The Bethunes (appellants) owned property adjacent to property bought by the Board of Education of the City of Mountain Brook from Nelson Weaver Mortgage Co., Inc. for a school. The Bethunes and the Mountain Brook Board of Education entered into an agreement in which the Bethunes agreed to build two streets across their property to the school property.
"One of the conditions of the purchase agreement made by and between the *150 Mountain Brook Board of Education and Nelson Weaver Mortgage Co., Inc. was `that Bethune Drive and Crosshill Road shall be extended and completed on or before December 31, 1965 . . .' across the property owned by the Bethunes. The Bethunes entered into a written contract with the Board of Education wherein they agreed to `cause Bethune Drive and Crosshill Road to be extended and completed in strict compliance with the requirements of the City of Mountain Brook as public streets . . . said Bethune Drive and Crosshill Road to be located as shown in that certain map designated as Preliminary Plan of Westbury Addition to Mountain Brook . . . a copy of which has heretofore been filed with the Planning Commission of the City of Mountain Brook . . . and said Bethune Drive and Crosshill Road, as shown on said map as aforesaid, shall be dedicated to public use upon final approval by the Planning Commission of the City of Mountain Brook.'
"The Bethunes built the streets. They were dedicated to the City. The Bethunes claim that when the City accepted dedication of the streets, the City approved the plat and agreed to allow them to file the subdivision plat at a later date. The City refused to accept the plat when the Bethunes offered to file it in 1971. The Bethunes subsequently filed this lawsuit, claiming damages because of the alleged breach by the City of its agreement to allow the late filing. The City answered the suit and admitted that it accepted the streets on March 27, 1967. The City also admitted that it had denied, in December 1971, the property owners' request to admit the subdivision plat to be recorded, however, the City denies that it made any agreement to allow the plat to be recorded at a later time.
"The City also says that if any agreement was made, it was void because: (1) it was not in writing as required by Title 37, § 467, Code of Alabama, 1940; (2) the approval of subdivision plats is a legislative function and any attempt by one council to bind the exercise of that function would be void and contrary to public policy."
After remand of the original appeal, the case was tried before a jury, which returned a verdict in the sum of $400,000 in favor of the plaintiffs. The trial judge granted a motion for a judgment notwithstanding the verdict filed by the City and in the alternative, he ruled that the City was entitled to a new trial.
On the first appeal of this case, this Court, discussing some of the disputed facts, said:
"According to the pleadings and the affidavits, as we view them, the Bethunes claim they received approval of their plat (with a deferred filing date) in consideration of their dedication of the two streets to the City. There is some evidence that the City was vitally interested in getting the two streets opened up to Mountain Brook High School. The City does not necessarily deny this, but says that the Bethunes were merely complying with the contractual obligation made by and between them and the Board of Education. These are disputed facts. This dispute over the facts shows that this was an inappropriate case for summary judgment. Rule 56, Alabama Rules of Civil Procedure. Therefore, we think the trial court erred in granting the City's motion for summary judgment.
"If the Bethunes can prove their claim that the City accepted the streets and impliedly agreed to give something in return, the Bethunes would be entitled to recover the reasonable value of the benefits which the City has accepted, used and retained."
* * * * * *
"The City cannot escape payment to the Bethunes for what it received from them, that is, if the Bethunes can prove their claim of an implied contract. Since many of the facts are seriously disputed, however, this opinion should not be construed as holding that there was an implied contract or that this Court believes *151 the facts are favorable to one side or the other."
In granting Mountain Brook's motion for a judgment notwithstanding the verdict, the trial court gave five reasons:
(1) The evidence was undisputed that the plaintiffs entered into a contract with the Board of Education of the City of Mountain Brook, and "it is now clear that there is no dispute that the pre-existing contract was executed, was supported by adequate consideration, and that the consideration given by the plaintiffs in support of that contract is the same as the consideration claimed by the plaintiffs to support this action."
(2) That "the judgment (sic) is based only on evidence which tends to vary or add to the official minutes of the City Council."
(3) That the "action allegedly taken by the City is outside the power of the City Council."
(4) That the alleged agreement was not the result of a corporate act.
(5) That the plaintiffs presented no evidence that the dedication of the streets resulted in a benefit to the city.
I will discuss each reason separately.
The first reason given by the trial judge in support of his action was that the plaintiffs were obligated to dedicate the streets under a pre-existing contract with the Mountain Brook Board of Education, the trial court finding that "after six days of trial, it is now clear that there is no dispute that the pre-existing contract was executed, was supported by adequate consideration, and that the consideration given by the plaintiffs in support of that contract is the same as the consideration claimed by the plaintiffs to support this action." By making this finding, the trial court has invaded the province of the jury, in my opinion. As this Court indicated in its prior opinion, there were many disputed facts surrounding the execution of the contract between the Board of Education and the plaintiffs and the role of the City of Mountain Brook in connection with this contract; therefore, this Court concluded there that summary judgment was inappropriate. The jury found adversely to the contention of the City and the jury's verdict cannot be disturbed on this ground because a motion for a judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. In considering the motion, the Court must view the evidence in the light most favorable to the party who secured the jury verdict. Moore's Federal Practice, 2d Ed., Vol. 5A, ¶150.07, pp. 2356-57. Using this yardstick, I believe that the trial court's first ground for granting the judgment notwithstanding the verdict was completely without merit.
The second ground given by the trial judge was that the jury verdict was based only on evidence which tended to vary or add to the official minutes of the City Council.
Admittedly, it has been said that acceptance of a contract by a municipality cannot be shown except by minutes in writing, but a distinction is made between evidence to contradict facts stated on the record and evidence to show facts omitted to be stated on the record. In fact, this Court, in City of Guntersville v. Walls, 252 Ala. 66, 39 So.2d 567 (1949), stated:
"Whatever may be the rule elsewhere, this Court has held that if the records of the city council do not speak the truth, they should be made to do so, for the council has the right at a subsequent meeting to amend them, and if the council should fail to do so on proper petition, mandamus will lie to require it. Mayor, etc., of City of Anniston v. Davis, 98 Ala. 629, 13 So. 331, 39 Am.St.Rep. 94; Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 131 So. 14; Harris v. Town of East Brewton, 238 Ala. 402, 191 So. 216; Harris v. Thompson, 29 Ala.App. 38, 191 So. 403; McQuillin Municipal Corporations (2d Ed.) sections 656, 657 and 658. And in Penton v. Brown-Crummer, supra, 222 Ala. 155, 131 So. 19 it was said: `Any errors in such records may be corrected at any subsequent session of the council. It *152 does not lose control of its minutes by the lapse of any definite time, as with the courts.'"
The rights of creditors or of third parties cannot be prejudiced by the neglect of the council to keep proper minutes. Cf. Bridgford v. City of Tuscumbia, 16 F. 910, 913 (N.D.Ala.1881).
The question of the power of the City of Mountain Brook to impliedly agree to allow the plaintiffs to file the plat at a later date was decided on the first appeal. This Court remanded the case before for a determination of the question of whether there was an implied contract, and if so, the extent of the damages. Where the power to contract lies within the competence of the city, and there is an irregular exercise of that power, recovery in quantum meruit may be had although the express contract may be void. See State v. Fourth National Bank of Columbus, Ga., 270 Ala. 135, 117 So.2d 145 (1959). The power of the City of Mountain Brook to ultimately control subdivisions within its boundaries cannot be seriously questioned. This Court so held implicitly on the prior appeal.
In addition, the jury could have found from the evidence that the City wanted to have the streets opened up so that the streets could be used in connection with the new high school. As a matter of fact, the evidence shows that the City made the alleged implied agreement to allow the plaintiffs to file the plat later, only after plaintiff Bethune told the Council:
"Q. And when you went to the City Council meeting on March 27, 1970
"A. 1967.
"Q. 1967. In 1967, when you went to that meeting, they were not inclined at first to accept the dedication of those roads without the lots being on the map. Is that correct?
"A. They didn't agree with us on it at first.
"Q. They didn't agree at first?
"A. Right.
"Q. And you told them sometime during that meeting that if they didn't take those roads that you would close them down and they could fly the kids into the school by helicopter?
"A. I did, yes.
* * * * * *
"Q. They adopted it after you said that, isn't that true?
"A. Yes. They accepted the roads without the lots being on it."
The plaintiffs put on substantial evidence about what transpired at the crucial March 27, 1967, Council meeting. The ex-mayor of the City of Mountain Brook was the only person who testified as a witness for the City about what transpired at this Council meeting. He did not deny that the Council agreed to let the plaintiffs file the subdivision plat at a later date. He said he could not remember all that transpired, but he did affirm that the matter of the late filing was discussed. The jury undoubtedly believed the plaintiffs' version of what transpired at the Council meeting. Since the City of Mountain Brook had the power to make the agreement, it cannot defeat its obligation to carry out the agreement by failing to make its minutes "speak the truth," in my opinion.
The third ground given by the trial judge was that the "action allegedly taken by the City is outside the power of the City Council." This finding is directly contrary to the holding of this Court on the first appeal, and is completely without merit, in my opinion.
The fourth ground given by the trial judge was that the alleged agreement was not the result of a corporate act. As already pointed out, all the evidence is to the contrary. The ex-mayor's testimony is the only evidence that an agreement was not made, and all he said was that he could not remember. The evidence was substantial that the City agreed, at least impliedly, to permit a late filing of the plat.
The last ground given by the judge for his granting the judgment notwithstanding the verdict was that the plaintiffs presented no evidence that the dedication of the streets resulted in a benefit to the City. *153 The jury obviously did not view the case in this light. There was sufficient evidence to support the jury verdict. As already pointed out, the jury could have found that the City was desirous of having the streets opened up. When plaintiff Bethune threatened to close the streets, the City reacted immediately. Absent dedication, the City would have had to condemn. Therefore, there was sufficient evidence of a benefit flowing to the City.
I now turn to the question of the trial court's treatment of the City's motion for a new trial. The trial judge, acting pursuant to ARCP 50(c)(1) ruled that if the judgment notwithstanding the verdict was reversed or vacated, then, in his opinion, the City would be entitled to a new trial. As the comments to ARCP 50 point out, the rule promotes judicial economy:
"The procedure, in effect, requires the judge who has granted judgment n. o. v. to also render an advisory opinion on any alternative motion for a new trial so the appellate court might have the benefit of this view in the event they reverse him on his grant of a judgment n. o. v. Thus, the appellate court can have an answer to the question, `Now that you have found out you erred in giving the verdict-loser a judgment n. o. v., would you give him a new trial?' Note that the new trial ruling if conditionally granted, is not binding on the appellate court."
In this case, the trial judge specified five reasons why he would grant a new trial if the judgment notwithstanding the verdict were not affirmed. For a thorough discussion of this Court's policy and scope of review of a judgment granting a new trial, see Hubbard Bros. Const. Co., Inc. v. C. F. Halstead Cont., Inc., 294 Ala. 688, 321 So.2d 169 (1975).
The judge's first reason for granting a new trial is that "the overwhelming evidence is against the plaintiff on each of the issues discussed above . . ." As this Court held in Jones v. Strange, 289 Ala. 76, 265 So.2d 860 (1972), when the trial judge orders a new trial because the verdict is against the great weight of the evidence, we will not reverse his order unless the great weight of the evidence shows the trial judge was plainly and palpably wrong.
I have already discussed much of the evidence which was presented in behalf of the plaintiffs. The City called three witnesses. Of these, as I pointed out earlier, the ex-mayor of Mountain Brook is the only one who testified for the City about the crucial March 27, City Council meeting. He testified that he could not remember what was said regarding recording the lots at a later date. In brief, the City says:
"The City's first witness was William Given, Jr., mayor of Mountain Brook in 1967 and a member of the City Council in 1971. As mayor, he was not a member of the City Council and was an ex-officio member of the Planning Commission. He did not recall making any statements to Mr. Bethune or his representatives at the City Council meeting of March 27, 1967 to the effect that the lots of First Sector, Second Addition could be recorded at a later time. He was not authorized as mayor to make commitments concerning approval of lots or plats. He stated that there must have been a discussion on March 27, 1967 about putting Second Addition lots on record either that night or at a later date. He wanted his testimony to reflect that he did not remember whether he did or did not say anything at the City Council meeting about later approval of the lots." [Emphasis added.]
The second witness to testify for the City was a civil engineer who testified as to various construction costs. The final witness for the City authenticated certain photographs which had been introduced as exhibits during the trial.
When I compare the testimony of the City's witnesses with the testimony of those who took the stand in favor of the plaintiffs, I am led inescapably to the conclusion that the great weight of the evidence shows that the trial judge was plainly and palpably wrong. The only evidence to support the City's version was that of witnesses *154 who did not remember. I think the evidence was all on the side of Bethune that an agreement was made.
The majority states that the trial judge correctly granted a new trial because of prejudicial conduct of counsel during argument. I disagree. The trial judge described the acts he found objectionable as follows:
"The Court is firmly of the opinion that the conduct of counsel for the plaintiffs and final argument of the plaintiffs was grossly improper and highly prejudicial. In the first place, counsel for the plaintiffs claimed on more than one occasion before the jury that the Supreme Court of Alabama had ruled in favor of the plaintiffs on various details of the case. The Court requested the jury to disregard counsel's final argument in that regard. On further reflections the Court is convinced that such statements were ineradicable and highly prejudicial. Additionally, the plaintiff made a `golden rule' argument which is deemed improper in virtually every jurisdiction of the country. The plaintiff spoke to and addressed individual jurors. The plaintiffs' counsel quoted Oliver Wendell Holmes and made an argument to the effect that the plaintiffs were willing to settle the case with the implication being that the defendant was not. Furthermore, the plaintiffs made a classic punitive damage argument which is inappropriate and highly prejudicial. My view in this regard is fortified by the enormity of the verdict in favor of the plaintiffs. The Court is convinced that the cumulative effect of the improper argument and the sidebar comments which are enumerated in the motion is that the defendants were denied a fair trial by the prejudicial conduct of counsel for the plaintiffs. Accordingly, the Court rules that the defendant is entitled to a new trial."
I have examined particularly the reference to the conduct of plaintiffs' counsel during closing arguments. Counsel for the City objected on only four occasions to argument that was being made by plaintiffs' counsel and in each instance, the trial court sustained objections to the argument. At one point, the court admonished plaintiffs' counsel as follows:
"THE COURT: Mr. Collins, I believe you have just about treaded on my patience and invaded the province of the Jury and acted in an unconscionable manner, and I caution you seriously do not make any further statements. And I support Mr. Stabler's objection. And ladies and gentlemen, I caution you and I ask you, if you will, give me an indication you will not take into consideration the statement just made to you by counsel. If you can do that, will you just please let me know. I want you to be reliable, keep an open mind. Can we all do that? We can. All right. Let's go on." [Emphasis added.]
I believe the record shows affirmatively that the jury indicated to the judge that they could decide the case fairly. Consequently, I believe the record shows the trial judge was plainly wrong in granting a new trial on this ground. Furthermore, the record shows the trial was adversary, to say the least.
During closing argument, counsel for the City, for instance, apparently in an attempt to answer some of the argument by plaintiffs' counsel, made the following statement concerning Mr. Bethune:
"Well, he may be for rugged individualism on Flag Day, but today, he is here for money. He is here to profiteer. He is here asking you to give him something that no other contractor could get.
"MR. COLLINS: I object to that, Your Honor. It is prejudicial.
"THE COURT: Overrule.
"MR. COLLINS: `Profiteering.'
"MR. STABLER: I hope it is prejudicial.
"THE COURT: Overrule.
"MR. STABLER: Not an improper prejudice, Your Honor, you understand." [Emphasis added.]
I think that the trial court was clearly wrong in ordering a new trial based upon *155 conduct of counsel during oral argument. The jurors told the trial judge that they could keep an open mind. I would believe them.
The majority seem to think that there were disputed facts surrounding the contract between the plaintiffs and the Mountain Brook Board of Education wherein it was provided that the plaintiffs would "cause Bethune Drive and Crosshill Road to be extended and completed in strict compliance with the requirements of the City of Mountain Brook." Even assuming the Bethunes agreed with the School Board to get these two streets extended and completed, the contract specifically provided that it would be in strict compliance with the requirements of the City of Mountain Brook. As I view the matter, any contract with the Board of Education was contingent upon what the City of Mountain Brook might require. In other words, if the Bethunes could have gotten the City of Mountain Book only to require dirt streets, then I believe that the Bethunes would have fulfilled any obligation they might have had under any contract with the School Board. The Bethunes had a right to expect that persons or corporations with whom they dealt in carrying out their obligation would perform their agreements, and I think that includes the one to allow a late filing of the plat. In other words, could the City refuse to carry out an agreement it made to allow the late filing of the plat on the ground that the plaintiffs were obligated to get the streets dedicated? I think not. Bethune performed his agreement by getting the streets dedicated. The streets were accepted by the City. Therefore, they had a reasonable expectancy to have the City honor its agreement to allow the late filing of the plat.
I know the plaintiffs had a heavy burden to show that the trial judge was plainly and palpably wrong when he determined that the plaintiffs had failed to prove an implied agreement. I believe that the evidence in this record shows that he was wrong. Unfortunately, the majority has not pointed out any evidence which would show that the City did not agree to allow a late filing of the plat.
The trial judge was of the opinion that the verdict was excessive. In this, I agree with him, but I do not believe that the defendant City is entitled to a new trial on any fact question determined by the jury except that of the amount of damages. In this connection, I have examined the record and based upon the evidence in the record, it appears that the implied contract was breached on December 13, 1971, when the City refused to allow the plaintiffs to place the plat or map on record.
What were the damages which flowed from the breach of the agreement? The City admits, in brief, that the testimony was uncontradicted that the lots could have been improved to meet the objections raised by the Mountain Brook Planning Commission for a cost of approximately $36,000. Even the City agrees that the plaintiffs would have had to expend approximately $36,000 to get an approval. Therefore, this sum is an obvious damage. In other words, if the plaintiffs had an agreement that they could file a plat at a later date, and the City made additional requirements, then the additional costs would be damages.
In view of this, I believe the trial court was correct that the verdict was excessive. However, I do not believe that a new trial should be had if the plaintiffs would agree to a remittitur. This Court has said that remittiturs are favored in proper cases for the promotion of justice and the ending of litigation. I believe this is a proper case for application of that principle. Even though the trial court did not condition the granting of a new trial to the defendant upon the filing of a remittitur by the plaintiffs, I believe that justice would be served if this Court took that action here.
In other words, I would conditionally affirm the trial court's granting of the defendant's motion for a new trial on the ground that the verdict was excessive. If the plaintiffs would file with the trial court a remittitur of all damages except the $36,000, *156 plus interest, I would reverse the judgment of the trial court granting the City's motion for a new trial.
FAULKNER and JONES, JJ., concur.