I respectfully dissent. This court has stated:
 "Granting or denial of a motion for new trial is in the trial court's discretion. The exercise of that discretion carries a presumption of correctness and will not be disturbed by this court absent plain and palpable error in exercise of the trial court's discretion and abuse of some legal right. Educators' Investment Corp. v. White, 374 So.2d 905
(Ala.Civ.App. 1979). When the trial court grants a motion for new trial, without specifying the grounds, this court will presume that the lower court granted the new trial on the ground of inadequacy of damages. Smith v. Winkles, 49 Ala.App. 454, 273 So.2d 215
(Ala.Civ.App. 1973).
 "Defendant asserts that the jury verdict should not be disturbed as being inadequate unless the verdict was produced by passion, prejudice, improper motive or influence on the jury. Montgomery Light and Traction Co. v. King, 187 Ala. 619, 65 So. 998
(1913); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Anderson, 52 Ala.App. 651, 296 So.2d 739 (Ala.Civ.App. 1974). Absent evidence of improper motive, prejudice or improper influence on the jury — and there is none in this case — however, the question in the case of inadequate damages is: does the verdict fail to give substantial compensation for substantial injuries? Smith v. Winkles, supra. The trial court should only use its power to set aside a jury verdict when it is apparent that injustice will result if another jury does not examine the facts. Alabama Farm Bureau Mutual Casualty Insurance Co. v. Anderson, supra; Watts v. Pettway, 49 Ala.App. 324, 272 So.2d 251
(Ala.Civ.App. 1973).
 "Plaintiffs argue, as has been mentioned earlier, that the court's granting of a new trial is in its discretion and is presumed correct. Hubbard Brothers Construction Co. v. C.F. Halstead Contractor, Inc., 294 Ala. 688, 321 So.2d 169 (1975). When the trial court grants a new trial on the ground of inadequate damages, this court must indulge this presumption unless the evidence plainly and palpably supports the verdict. Curry v. Griffith, 52 Ala.App. 644, 296 So.2d 733 (Ala.Civ.App. 1974)."
Cannon v. Jones, 426 So.2d 439, 440-41 (Ala.Civ.App. 1983). See also Merritt v. Roberts, 481 So.2d 909 (Ala.Civ.App. 1985).
The trial court's order granting a new trial specifically stated that the reasonableness and necessity of Dr. Duca's
medical bills were "largely uncontradicted," and *Page 1196 
it determined the jury's verdict to be inadequate because the amount awarded to Mohammad was less than the amount of those bills. The majority opinion makes reference to facts that were not essential to the trial court's granting of a new trial or that were not specifically relied on by the defendants to support their argument that they sufficiently contradicted the reasonableness and necessity of Dr. Duca's bills. In their appeal to this court, the defendants specifically argue that they sufficiently contradicted the plaintiff's evidence of damages by questioning Dr. Duca during cross-examination about liens that had been signed by Mohammad and his wife concerning their medical bills with Dr. Duca, in response to which Dr. Duca acknowledged that he had a financial interest in the outcome of the case, and by pointing out a conflict between Dr. Duca's testimony during direct examination at trial and information in one of his medical notes.
At trial, Dr. Duca testified, during direct examination, in regard to his medical charges:
 "Q. What were your total charges for Amin [Mohammad's child] during the time when you saw him?
"A. Looks like its $705.
 "Q. Were those charges reasonable and necessary for [Amin's] treatment?
"A. Yes. . . .
". . . .
"Q. What were Imad's [Mohammad's child] bill totals?
"A. Looks like Imad's [were] $885.
". . . .
 "Q. Were his bills reasonable and necessary for the treatment of his symptoms?
"A. Yes they were.
 "Q. Were the injuries that they sustained or the symptoms that you saw consistent with injuries that you have seen in your practice of a rear-end collision?
"A. Yes.
". . . .
 "Q. And were the injuries that [Sana, Mohammad's wife,] sustained in this wreck consistent with those of a rearend collision?
"A. Yes.
". . . .
"Q. What was your total bill for treatment of Sana?
"A. Sana's was $3,614.
 "Q. Were those charges reasonable and necessary for her treatment?
"A. Yes.
". . . .
 "Q. Okay. At some point during the late summer or early fall [of 1999] —
"A. Uh-huh.
 "Q. — is it your understanding that [Mohammad] was involved in another rear-end collision?
"A. Yes.
 "Q. Tell us, Doctor, were the symptoms that he suffered after the second collision any different from the symptoms he was suffering after the collision in March of 1999?
"A. No, they were the same.
". . . .
 "Q. Okay. How much were your total bills for Mr. Mohammad?
"A. For Mr. Mohammad, they were $4,739.
 "Q. Were those bills reasonable and necessary for his treatment?
"A. Yes. . . ."
The total amount charged to the plaintiffs by Dr. Duca, as established by his testimony and exhibits admitted into evidence, was $9,943. *Page 1197 
On cross-examination, Dr. Duca testified, in pertinent part:
 "Q. Doctor, I think [the plaintiffs' counsel] asked you if [Mohammad's] symptoms were different after the second accident than they were before. What was your response?
"A. I believe I said they were the same.
 "Q. Okay. But would you turn to your notes for August 23, 1999? Do you have your file with you?
 "A. I have — you had probably better give me what you have.
". . . .
 "Q. Right there on top, August 23rd. That's this note right here. `Was rearended Friday August 20, pain in the neck worse, headaches worse than before.'
 "That is a little bit different than what you just told the jury, is it not?
 "A. Well, the symptoms were the same, and he had headaches and neck pain from the first injury.
"I don't understand what you're asking me.
 "Q. Was there a difference between his pain beforehand, before August 20th and after?
"A. Yeah.
". . . .
 "Q. Now, I also want to ask you about what I've marked as Defendant's Exhibit 4 [a lien, which was admitted into evidence but which does not appear as an exhibit to the record on appeal], and ask you is that something that you had Ms. Sana Mohammad fill out?
"A. Yes.
 "Q. And did you have Mr. Mohammad fill out that, as well?
"A. I believe so.
 "Q. And that document gives you a direct financial interest in this trial, does it not?
"A. Well, of course."
Keeping in mind that the trial court's grant of a new trial carries a presumption of correctness, Hubbard BrothersConstruction Co. v. C.F. Halstead Contractor, Inc.,294 Ala. 688, 321 So.2d 169 (1975), I conclude that the evidence relied upon by the defendants does not contradict the necessity for, and reasonableness of, the amount of Dr. Duca's medical charges incurred by the plaintiffs and cannot be said to "plainly and palpably" support the jury's verdict. Curry v. Griffith,52 Ala. App. 644, 296 So.2d 733 (Ala.Civ.App. 1974).
YATES, P.J., concurs.